## AMERICAN NAT. BANK v. NORTHWESTERN MUT. LIFE INS. CO.

(Circuit Court of Appeals, Eighth Circuit. October 3, 1898.)

### No. 1,064.

1. MORTGAGES—SUIT FOR FORECLOSURE—RECEIVER.
   A court of equity, under its general powers, may appoint a receiver for mortgaged property pending foreclosure, where it appears that the property is insufficient security for the debt, that the debtor is insolvent, and that the rents are not being applied to keeping up the taxes, repairs, or insurance.[1]

2. SAME—RENTS OF MORTGAGED PROPERTY—EFFECT OF STATUTE.
   The fact that, under the provisions of the Colorado statute, a mortgagee is not entitled to possession of the mortgaged property, nor the rents and profits thereof, until foreclosure and sale, does not render it illegal for a court to collect the rents pending foreclosure by a receiver, and apply the same to the payment of taxes, insurance, and for repairs on the property, which the mortgagor had covenanted to keep up, nor to apply any balance remaining in the receiver's hands to the repayment of money advanced by the mortgagee for the same purposes.

3. SAME—EXTENT OF LIEN—ADVANCES BY MORTGAGEE TO PAY ASSESSMENTS.
   The streets adjacent to mortgaged property had been paved, the cost assessed against the property, the property sold, and the time for redemption had nearly expired when the mortgagee redeemed from the sale. No steps had been taken by the mortgagor to contest the validity of the assessment. The mortgage provided that any tax or assessment paid by the mortgagee should be included in the debt secured. *Held*, that the

---

[1] As to mortgage foreclosures in federal courts generally, see note to Seattle, L. S. & E. Ry. Co. v. Union Trust Co., 24 C. C. A. 523.

court should not refuse to include it on a claim by the mortgagor that the sale of the property was not authorized, nor that because of a defect in the proceedings it could have been defeated.

Appeal from the Circuit Court of the United States for the District of Colorado.

From the record in this case it appears that on the 3d day of November, 1890, Susan M. and Daniel M. Mays, being the owners of certain lots in the city of Denver, Colo., executed a mortgage thereon to the Northwestern Mutual Life Insurance Company, to secure the payment of $75,000 in five years from the date of the mortgage. There was situated on the premises a four-story brick building, the lower story being divided into store rooms, and the upper portion being used as an hotel, known as the "Gilsey House," and the mortgage conveyed the lots by numbers, together "with the privileges and appurtenances to the same belonging, and all the rents, issues, and profits which may arise or be had therefrom"; it being further provided and covenanted therein that the mortgagors should keep the property insured for the benefit of the mortgagee, and should pay annually all taxes and assessments that might be levied on the premises, and in case of failure so to do the mortgagee might pay the insurance premium, and the taxes and assessments, and the amounts thus advanced should be added to, and be deemed part and parcel of, the moneys secured by the mortgage. On the 29th of October, 1891, Susan M. Mays, in whose name the title to the property vested, executed to the Hamilton Loan & Trust Company a trust deed of the property to secure the payment of the sum of $15,000, and on the 5th day of June, 1893, a second trust deed was executed by Susan M. and Daniel M. Mays to Mitchell Benedict to secure the payment of a further sum of $14,000. In April, 1894, the American National Bank, by procurement of Susan M. and Daniel M. Mays, bought the notes secured by the trust deeds to the Hamilton Loan & Trust Company, and to Mitchell Benedict, and advanced the sum needed to pay the taxes, insurance, and interest due to the Northwestern Mutual, and, to secure the bank for these advances, a third trust deed on the property was executed to Charles M. Clinton, and, by contract in writing, there was assigned to the bank the rents payable by the tenants of the building; it being provided in the contract that the bank should collect the rentals, and that, to the amount of $743.50 monthly, they should be applied to the payment of interest coming due to the insurance company, to the interest coming due on the notes held by the bank, and to the taxes and insurance upon the property, the surplus, if any, to be paid to Susan M. and Daniel M. Mays. On the 23d day of February, 1897, the sheriff of Arapahoe county, under the terms of the trust deeds to the Hamilton Loan & Trust Company and to Mitchell Benedict, sold the premises at public sale, after due notice, the same being purchased by the bank, to which the title of the property passed subject to the rights of the insurance company, which company had on the 26th day of January previous filed its bill for the foreclosure of the mortgage held by it in the United States circuit court for the district of Colorado. On the 17th day of February, 1897, the insurance company filed in said foreclosure suit a petition asking the appointment of a receiver to collect the rents of the mortgaged premises, and make proper application thereof, it being averred in the petition that the insurance upon the premises was being allowed to expire without renewal: that the taxes were not paid; that the bank had induced the insurance company to delay proceedings for foreclosure upon the express promise that, when it resumed business by permission of the comptroller of the currency, it would pay up the arrearages of interest and taxes; that the bank had failed to perform its agreement, having collected some $8,000 of rents, which it had converted to its own use; that to protect the property the insurance company had been compelled to pay more than $3,500 in taxes; that the bank refused to pay the water rents, and failed to keep the premises in good repair; that the premises would not sell at forced sale for more than $70,000 (a sum less than the amount of the mortgage debt); and that the mortgagors were insolvent. To this petition the bank filed an answer, and on the 27th day of February, 1897, the matter

came up for hearing before the court, and it was then adjudged that the prayer of the petition be granted, and that A. M. Estey be appointed receiver, with power to collect and receive the rents, the same to be applied in paying the expenses of operating the building, to the payment of the taxes and insurance, to the repayment to the complainant insurance company of the sums by it advanced in payment of taxes and insurance, and the balance to be held subject to the further order of the court. Thereupon the bank filed an answer to the foreclosure bill, and the case came up for final hearing on January 4, 1898, being one of the days of the November term, 1897, and on that day a decree was granted, finding the total sum due complainant, and finding the sum remaining in the hands of the receiver to be $282.68, which amount was ordered to be paid to complainant to apply on the amount due it, and ordering a sale of the mortgaged premises. The American National Bank now brings the case before this court on appeal, and specifies, as the errors relied on for the reversal of the decree, the appointment of the receiver with authority to collect the rents and profits; the order of the court directing the receiver to pay out of the rents the money advanced by the appellee in the payment of the taxes on the premises; the order that the receiver should pay the balance of money in his hands to the appellee; and the inclusion in the amount adjudged to be due to appellee of the sum of $2,266.95 paid by the appellee to redeem the mortgaged property from a sale upon an assessment for a paving tax.

T. J. O'Donnell (Milton Smith, on brief), for appellant.

John H. Denison (Ralph Talbot, on brief), for appellee.

Before SANBORN and THAYER, Circuit Judges, and SHIRAS, District Judge.

SHIRAS, District Judge, after stating the case as above, delivered the opinion of the court.

In support of the proposition that the circuit court committed reversible error in appointing a receiver, counsel for appellant cite the cases of Teal v. Walker, 111 U. S. 242, 4 Sup. Ct. 420; Hazeltine v. Granger, 44 Mich. 503, 7 N. W. 74; Union Mut. Life Ins. Co. v. Union Mills Plaster Co., 37 Fed. 286; and Couper v. Shirley, 21 C. C. A. 288, 75 Fed. 168,—which hold the doctrine that a mortgagee has not a legal right to the possession of the mortgaged property until a completed sale upon foreclosure has been had, nor has he a right to the rents and profits until his legal right to possession has been established. If the appointment of the receiver had been made solely on the ground that the mortgagee was entitled to the rents and profits, these authorities would be in point, but this is not the fact. The petition asking the appointment avers the inadequacy of the security, the insolvency of the mortgagors, the failure to pay the taxes, the failure to pay the water rents, which would result in a loss of tenants, the failure to keep the property insured, the failure to keep the premises in good repair, and the fact that the appellant was collecting the rents, but was not applying the same to the protection of the property, as it was required to do by contract. It thus appears that the appointment of the receiver was asked upon well-recognized equitable grounds, and was not based upon an asserted legal right to the rents and profits accruing before foreclosure. Thus in Kountze v. Hotel Co., 107 U. S. 378, 2 Sup. Ct. 911, it is said:

"Courts of equity always have the power, where the debtor is insolvent, and the mortgaged property is an insufficient security for the debt, and there

is good cause to believe that it will be wasted or deteriorated in the hands of the mortgagor, as by cutting of timber, suffering dilapidation, etc., to take charge of the property by means of a receiver, and preserve, not only the corpus, but the rents and profits, for the satisfaction of the debt."

It cannot, therefore, be successfully questioned that the circuit court had full jurisdiction to hear the petition for the appointment of a receiver, and, upon a proper showing, to grant the application, and, as we understand the record, the question whether the discretion of the court was rightly exercised in the premises is not before us for consideration.

The appellant had been made a party defendant in the foreclosure proceedings, had notice of the petition for the appointment of a receiver, filed an answer thereto, and was heard upon the issues thus presented. As already stated, the order appointing the receiver was made February 27, 1897, and it does not appear that the appellant saved an exception to the ruling made, nor does the record show what evidence was submitted to the court upon the hearing of the petition for the appointment of the receiver. Furthermore, in the petition for the allowance of the appeal in this case, it is recited that "the defendant, the American National Bank of Denver, respectfully prays an appeal to the United States circuit court of appeals for the Eighth circuit, from the decree entered in the above-entitled cause at the November term of this court, A. D. 1897."

The only questions, therefore, properly before us for consideration are those arising on the errors assigned upon the final decree of foreclosure, the first of which is that the court erred in ordering the receiver to pay to the defendant in error the balance of the funds in his hands, and in refusing to decree that all the rentals collected by the receiver should be paid to the appellant. The contention of counsel for appellant is that under the provisions of the statute of Colorado (Civ. Code, § 261), which provide that "a mortgage of real property shall not be deemed a conveyance, whatever its terms, so as to enable the owner of the mortgage to recover possession of the real property without foreclosure and sale," the rents and profits derived from the mortgaged property before the foreclosure sale cannot be applied to the payment of the mortgage debt.

Under the doctrine announced in Teal v. Walker, 111 U. S. 242, 4 Sup. Ct. 420, wherein the supreme court was called upon to consider this general question with reference to the provisions of the statutes of Oregon, which are similar in effect to those in force in Colorado, and wherein it was held that, as the mortgagee had no right to take possession before a sale, he had no claim to the rents and profits accruing before he had acquired a right to possession through a foreclosure sale, it seems to be settled that, under the provisions of the Colorado statute, a mortgagee cannot maintain a right to have such rents and profits applied to the satisfaction of his mortgage debt, as the same belong to the mortgagor, and the mortgage is not a lien thereon, nor will the appointment of a receiver, for the purpose of collecting the rents, create an equitable lien thereon, in favor of the mortgagee, which is the rule held in some jurisdictions. High, Rec. § 643; Post

v. Dorr, 4 Edw. Ch. 412; U. S. Trust Co. v. New York, W. S. & B. R. Co., 101 N. Y. 478, 5 N. E. 316.

Relying upon this construction of the Colorado statute, counsel for appellant claim that the final decree of foreclosure should have provided that all the rents collected by the receiver should have been ordered paid to appellant, as well as the sum of $282.62, which was in the hands of the receiver at the date of the decree. The record does not show that any part of the rents collected by the receiver was used in payment of the original mortgage debt due to the appellee, but, on the contrary, it shows that the money paid to the receiver as rental was expended in repairing the mortgaged premises, in keeping up the insurance, in paying the taxes, and in repaying to the appellee the money by it advanced to pay taxes on the property. In consideration of the loan made by the appellee to Susan M. and Daniel M. Mays, they agreed to keep the property insured to the amount of $45,000, and to pay annually all taxes and assessments levied on the property. When the receiver was appointed, the mortgagors could well claim that, as they had been thus prevented from receiving the rentals of the property, they would be excused in equity from any further personal liability to pay the taxes and insurance, and that the obligation to thus protect the property was assumed by the receiver, to the extent of the rentals by him received. The receiver was appointed by the court for the purpose of protecting the property in the interest of all who held a title thereto or a lien thereon, and the proper protection of the property required that it should be kept insured; that the taxes thereon should be paid; that the building should be kept in repair, and in condition to assure its occupancy; and, if the receiver was justified in making the outlay necessary to thus protect the property, he certainly must be protected in applying the rental in his hands to the payment of the cost thereof. The effect of the provisions of the decree to which exception is taken is to approve the action of the receiver in applying the rentals coming into his hands to the payment of the taxes, insurance, and the cost of needed repairs; and the fact that, under the provisions of the Colorado statute, a mortgagee is not entitled to the possession of the mortgaged property, nor to the rents and profits thereof, until a foreclosure is had, does not tend to show that this disposition of the rentals was not entirely right and legal.

The position taken on behalf of appellant is that by means of the purchase made by it at the sale under the trust deeds the bank became the owner of the title and equity of redemption held by Susan M. and Daniel M. Mays, and from that date became entitled to the rents coming from the property. Granting this to be true, it does not follow that the bank acquired, as against the Northwestern Insurance Company, any right or equity greater than that held by the mortgagors, Susan M. and Daniel M. Mays; and therefore the question is whether they have the right to insist that when the court took possession of the premises, through its receiver, it could not apply the rentals to the payment of taxes, insurance, and repairs, but must pay the same to the mortgagor, and thus let the property

be destroyed, in whole or in part.    This query is fairly answered in the language used by the supreme court in Shepherd v. Pepper, 133 U. S. 626–652, 10 Sup. Ct. 438, wherein it is said:

"As to the question of the disposition of the rents in the hands of the receiver, we think the action of the court below was proper.    The pecuniary condition of Shepherd, his failure to pay taxes, premiums of insurance, or interest, the inadequacy of the property to pay the claims of Pepper and Mrs. Gray, and the diversion of the income from rents, from making such payments, to the use of Shepherd, up to the time of the appointment of the receiver, were adequate grounds for the appointment of the receiver. Kountze v. Hotel Co.. 107 U. S. 378, 395, 2 Sup. Ct. 911;  Grant v. Insurance Co., 121 U. S. 105, 7 Sup. Ct. 841.    The court, through its receiver, took possession of the rents in order to preserve them for that party to the suit who should ultimately be found to be equitably entitled to them.    Hitz v. Jenks, 123 U. S. 297. 306. 8 Sup. Ct. 143.    The various reports of the receiver contained in the record, as to his payment of taxes, premiums of insurance, and the expenses of repairs on the building. show the necessity of his appointment. It would be grossly unjust, on the facts developed in this case, to appropriate the rents in the hands of the receiver to the use of Shepherd."

Certainly no further citation of authorities is needed to show that the court below rightly held that the rentals of the property collected by the receiver were properly applied in the payment of taxes, insurance, and repairs, and that the balance in his hands of $282.68 should be applied in the repayment to the appellee of the money by it advanced to pay taxes and insurance, which, in effect, is the meaning of the decree entered.

The record shows that the appellee had advanced, in payment of taxes and insurance, a sum greater than all it had received, and which will not be fully repaid if it receives the balance in the hands of the receiver.    This money was advanced and used to protect the property for the benefit of all interested therein, and the appellee is clearly entitled to be reimbursed therefor, before any of the rental is paid to the mortgagors, whose duty it was to pay the taxes and insurance thus advanced by the appellee, and in this respect the rights of the appellant are not other or greater than those of the original mortgagors.

The only other error assigned is based on the fact that the court included in the amount found due under the mortgage the sum of $2,266.95, which had been paid by the appellee to redeem the property from a sale thereof under an assessment for a paving tax; the contention of the appellant being that, through an omission in the charter of the city of Denver, in force when the assessment was made, the paving tax was not a lien on the realty, and that, in any event, it was not assessed until after the execution of the mortgage to the appellee, and of the trust deed to the Hamilton Loan & Trust Company, and therefore the lien would be inferior to that of the bank, which holds title under this trust deed.    The question is not whether the city charter in terms created a statutory lien for this assessment, but whether it comes within the lien created by the mortgage held by the appellee, to which mortgage the rights of the appellant are subject.    The charter provided for making assessments against city lots for the paving in front thereof, and, if the same were not paid within the time provided by ordinance, they were to

be certified to the city clerk, to be by him placed upon the tax list as part of the city taxes for the current year, to be collected in the same manner as general city taxes, the city having the right to purchase at tax sale any lots sold for paving assessments. It is clear that these provisions of the charter made the paving assessment in question a charge upon the property, with authority to sell the same for the collection of the tax, and in substance this makes the assessment a lien. Thus, in Peck v. Jenness, 7 How. 611, it is said: "In courts of equity, the term 'lien' is used as synonymous with a charge or incumbrance upon a thing, where there is neither jus in re nor ad rem, nor possession of the thing." In Bouvier's Law Dictionary a "lien" is defined to be "a hold or claim which one has on the property of another as a security for some debt or charge." But, waiving the question whether this assessment was technically a lien, there can be no doubt that it was an assessment against the property, which became a charge thereon, and for the collection of which the property could be sold.

By the express terms of the mortgage to appellant, the mortgagors bound themselves to pay all taxes and assessments on the mortgaged premises; it being further expressly provided that, in case of foreclosure of the mortgage, the decree entered "shall embrace, with said principal debt and interest, all sums so paid for or on account of insurance, taxes, assessments, or prior liens, with interest at the rate aforesaid." Thus, the sums paid out by the mortgagee for insurance, taxes, and assessments are made part of the debt secured by the lien of the mortgage; and there is no more reason for excluding a sum paid to clear the property from a paving assessment from the protection of the mortgage than exists for excluding a sum paid for insurance, and no exception is taken to including in the decree the sums paid by the appellee in keeping up the insurance. But it is further urged that, through a failure to observe some of the requirements of the statute, the assessment for the paving is not a valid charge against the property, and therefore the amount paid by the appellee to redeem the property from the tax sale should not now be allowed it as part of the sums secured by the mortgage; and, further, that the sale of the property for such assessment was not authorized by any statute then in force, and the redemption from such sale was not an act necessary to protect the title to the property. It will be noticed that it is not claimed that the paving had not in fact been done, nor that an assessment had not in form been made against the property, nor that a sale had not been made of the property which might ripen into a title; and therefore it cannot be claimed that equitably a right to assess the expense of the paving against the property did not exist, but the contention is that, notwithstanding the fact that the paving had been done for the benefit of the property, payment therefor might be escaped by invoking legal objections. Courts of equity do not encourage, nor look with favor upon, efforts to escape obligations well founded in fact, though the same may not be enforceable at law. If it be true, as claimed by appellant,—a question we do not consider,—that the city of Denver could not enforce payment of the paving assessment by a sale of the property under the general tax law,

yet that would not invalidate the assessment nor prevent its enforcement by a proceeding in court; for, if there was no statutory mode provided for enforcing payment of the assessment, the city would have the right to invoke the aid of the court for that purpose. Savings Bank v. U. S., 19 Wall. 227.

The evidence shows that the assessment for the paving was in fact made; the property was sold therefor; the time for the redemption from such sale had nearly expired; neither the original mortgagors nor the appellant had taken any steps to question the validity of the assessment, or to relieve the property from the charge asserted against it. Under these circumstances, the appellee, in order to prevent the sale ripening into a title, paid the assessment, and the court below ruled that the sum thus paid should be allowed the appellee, under the provisions of the mortgage, and we see no reason for holding that there was error in such ruling. Finding no merit in the errors assigned, the decree appealed from is affirmed.