[No. 5184.]
[No. 2789 C. A.]

MONCRIEFF V. HARE.

1. **Mortgages—Nature and Form—Statutory Construction—Possession of Premises—Rights of Mortgagee.**

Section 261, Colo. Civil Code, providing that a mortgage of real property shall not be deemed a conveyance, whatever its terms, so as to enable the owner of the mortgage to recover possession of the real property without foreclosure and sale, deprives such mortgage of its common-law character, and the mortgagee of all possession or right of possession, before or after condition broken, until after foreclosure and sale.—P. 226.

2. **Same—Rents and Profits—Receivers.**

Although Colo. Civil Code, § 261, provides that the owner of a real estate mortgage shall not be entitled to the possession of the mortgaged property without foreclosure and sale, where such a mortgage pledges rents and profits as part of the security, and the security is inadequate and the mortgagor insolvent, a court of equity may appoint a receiver any time after filing the suit of foreclosure to collect the rents and profits and have the same applied on the mortgage debt.—P. 237.

*Appeal from the District Court of Arapahoe County.*
*Hon. Booth M. Malone, Judge.*

Suit by Charles Willing Hare against Zouave E. Moncrieff, as administrator of the estate of John Moncrieff, deceased. From a judgment in favor of plaintiff, defendant appeals.          *Affirmed.*

Mr. HENRY C. CHARPIOT and Mr. JOHN A. PERCY, for appellant.

Mr. JAMES H. PERSHING, for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

This special proceeding, in the nature of a suit for specific performance, was begun in the county court of Arapahoe county to compel an administrator of an estate, who had received his letters from that tribunal, to conform to the terms of a real estate mortgage given to secure the payment of estate indebtedness which he refused to observe, though, at his request, the court had specifically directed him to execute it. The county court granted the full relief asked by the appellee, and the administrator took the case by appeal to the district court, where the decree of the county court was affirmed with modifications hereinafter adverted to. From the judgment of the district court, the administrator has brought the case here.

Upon this appeal there are no disputed questions of fact, and but a single legal question is involved. To show the equities, which are clearly with the mortgagee, who is appellee here, the facts are fully stated.

John Moncrieff, whose estate is now being administered by Zouave E. Moncrieff, in his lifetime borrowed $33,000, and gave his note therefor, which afterwards became the property of appellee Hare. To secure its payment, John Moncrieff gave a mortgage upon a number of lots in the city of Denver. The note did not mature until after John's death, and while his estate was in process of administration, against which the debt was established as a claim of the fourth class. Default was made in payment, Hare foreclosed the mortgage or deed of trust

in the district court, and at the foreclosure sale bid in the property for $20,000, and credited the same upon the note, leaving a balance due of over $15,000, for which a deficiency judgment was rendered.

It seems that the foreclosure and sale were brought about with an understanding between the mortgagee Hare, the administrator and the heirs of John Moncrieff for a readjustment of the indebtedness upon the following plan:

Hare agreed to, and did, extend the maturity of the entire indebtedness for three years, and, for a consideration of $20,000, reconveyed to the heirs the property purchased at the foreclosure sale. To secure the payment of the debt, a mortgage on the reconveyed property was given by the heirs, and Hare put into possession with power to receive the rents and profits, out of which he was to pay taxes, insurance, repairs and interest on the mortgage debt.

As additional security, two other lots (being a part of the unencumbered estate of John Moncrieff) were covered by a second mortgage, in which the heirs and the administrator joined. As these lots belonged to the estate, application was made to the county court for leave to encumber it, and authority and direction were given to the administrator to mortgage both the property and its rents and profits. In pursuance thereof, the instrument contained the following clause, which gives rise to this controversy:

"It is further covenanted and agreed that, after applying the rents and profits from the property aforesaid to the payment of the insurance premiums, taxes, assessments, necessary repairs and necessary incidental expenses, that he will pay over the net balance of said rents to the said Charles Willing Hare, or to his duly authorized agent, to be applied upon the interest upon the notes secured by the mortgage ratably."

The mortgagee was not placed in possession of this property because the same was already *in custodia legis*, and the administrator, being the representative of the estate, was deemed a proper person to collect and apply the rents in accordance with the terms of the mortgage just quoted. Until about the time of the maturity of the debt the administrator collected the rents and profits and applied them as the mortgage prescribed and as the county court, in authorizing its execution, directed. Thereafter he refused to comply with these terms as to rents and profits, and the indebtedness being due and unpaid, the mortgagee began foreclosure proceedings in the district court in the year 1901, and in a separate proceeding (which is the one now under consideration) applied to the county court for an order to compel the administrator to observe the covenants of the mortgage, and apply the rents and profits to the payment of the taxes and insurance then in arrears, and the balance, if any, in reducing the interest, and to continue so to do pending foreclosure proceedings, and until possession of the property was delivered to the purchaser at the foreclosure sale.

As a part of the readjustment plan, Hare, particularly in view of the new pledge of rents and profits, released securities he held on other property of the estate, relieved the Moncrieff heirs from personal liability upon the debt, and relinquished his claim against the estate. When this proceeding was begun, it is conceded that the mortgaged premises were and are insufficient security for the payment of the debt, and that they constitute the only asset available to apply on the debt, as all the mortgagors are insolvent.

The legal question, therefore, is whether, under the facts disclosed by this record, the rents and profits belong to the mortgagors until the period for re-

demption has expired, or whether they may be ap-
·plied upon the interest on the mortgage debt.

Counsel do not object to the form of the proceed-
ing, apparently agreeing that if this is a case where
a court of equity, in which foreclosure proceedings
are pending, might appoint a receiver to sequester
the rents and profits to be applied in accordance with
the rights of the parties, to be ascertained upon final
hearing, that the same relief may be granted herein
if the equities are with the mortgagee.

It is the contention of the administrator that, un-
der section 261 of our Code of Civil Procedure, read-
ing: "A mortgage of real property shall not be
deemed a conveyance, whatever its terms, so as to
enable the owner of the mortgage to recover posses-
sion of the real property without foreclosure and
sale," the rents of mortgaged property cannot be ap-
plied to the reduction of the mortgage debt, in conse-
quence of any agreement in the mortgage itself, until
the mortgagee has obtained actual possession, or has
acquired the right to possession under a foreclosure
and sale after the period of redemption has expired.
The mortgagee contends that, while this provision
of the code makes the mortgage merely a security for
the debt, and the mortgagee acquires no legal title,
nevertheless, where his mortgage security is inade-
quate, especially where there is a specific pledge
of rents as part of the security, and the mortgagor
is insolvent, a court of equity may, upon default
and after foreclosure suit has been brought, appoint
a receiver to collect the rents and profits and have
the same applied upon the mortgage debt when final
decree is made.   In other words, the mortgagee says
that this section was not intended to take away from
courts of equity their power in such cases to apply
rents and profits of the mortgaged estate towards the
reduction of the mortgage debt.

It is familiar learning that, at common law, a mortgage vests the legal title in the mortgagee, and upon condition broken the mortgagee might re-enter or bring ejectment. Our statute, however, has taken from the instrument its common-law character, and deprived the mortgagee of all possession, or right of possession, either before or after condition broken; and before this right exists the mortgagee must foreclose his mortgage and sell the mortgaged property. This court, in *P. & A. V. R. R. Co. v. Beshoar,* 8 Colo. 32, has so construed our statute in harmony with rulings in other jurisdictions where similar statutes are in force, and has said that, in the absence of a special contract to the contrary, the equitable doctrine has thereby been made universal that a mortgage creates merely a lien.

The language of this court that such was the doctrine, in the absence of a special contract to the contrary, indicates that the mortgagor and mortgagee may, by special contract, work a change in the rule. To the same effect is *Fogarty v. Sawyer,* 17 Cal. 589, where, in speaking for the court, Chief Justice Field says the statute does not prevent the owner from making an independent contract for the possession, or from authorizing a sale of the premises, the mortgagee consenting thereto, to pay off the debt, and this right to dispose both of the possession and estate follows necessarily from the ownership of the property, and no valid objection can be urged against incorporating the contract and power in the same instrument with the mortgage.

Such a contract as we find in the mortgage in this case concerning rents and profits is just as much independent of this mortgage proper as was the contract in the *Fogarty case* creating a power of sale independent of that mortgage.

But, in disposing of this case, we shall not rest our judgment upon the power of the parties by independent contract to take the case out of the operation of the statute; but, giving to the statute all that the mortgagor here claims for it, we shall see from a review of the authorities that the prevailing rule established by the authorities, as well as the correct principle, is that in a case like ours the mortgagee is entitled to rents and profits.

The mortgagor relies chiefly upon the following cases: *Teal v. Walker,* 111 U. S. 242; *Guy v. Ide,* 6 Cal. 99; *Hazeltine v. Granger,* 44 Mich. 503; *Couper v. Shirley,* 75 Fed. Rep. 168; *Wagar v. Stone,* 36 Mich. 364; *Beecher v. Marquette & Pac. R. M. Co.,* 40 Mich. 307; *Amer. Nat. Bank v. Northwestern Mut. L. I. Co.,* 89 Fed. 610.

*Teal v. Walker* was an action at law brought by Walker, mortgagee, as against Teal, one of the mortgagors, to recover damages which the mortgagee claimed he had sustained by the refusal of Teal to surrender possession of the mortgaged property, and the court held that, inasmuch as the plaintiff mortgagee took no effectual steps to regain possession of the mortgaged premises, he was not entitled to the rents and profits thereof while they were occupied by the mortgagor, who was the owner of the equity of redemption. In that case, which arose in Oregon, the court, in construing a statute in the same words as ours, said that a mortgage is not a conveyance, and a mortgagee is not entitled to possession until after the foreclosure and sale, and therefore his claim to the rents is without support. It will be observed that no equitable principle was invoked in this case, the naked question being the relative rights of mortgagor and mortgagee to rents and profits of the mortgaged property while they were in posses-

sion of the mortgagor, and before the mortgagee, by suit or otherwise, sought to obtain possession.

The court, in its opinion, refers to *Kountze v. Omaha Hotel Co.,* 107 U. S. 378, in which it was also said that, under a similar statute, the land mortgaged is in the nature of a pledge, and the rents and profits are not pledged, and that they belong to the one in possession, whether he be the mortgagor or a third person claiming under him, and the conclusion in the *Kountze case* was that, as the plaintiff was not entitled to possession, he had no right to the rents and profits. In that case, however, which was equitable in its character for the foreclosure of a mortgage, the court expressly recognized the equitable doctrine that rents and profits might be applied to the satisfaction of a debt, and said:

"There is another consideration which relieves the conclusion which we have reached from any supposed hardship or injustice to mortgagees. Courts of equity always have the power, where the debtor is insolvent, and the mortgaged property is an insufficient security for the debt, and there is good cause to believe that it will be wasted or deteriorated in the hands of the mortgagor, as by cutting of timber, suffering dilapidation, etc., to take charge of the property by means of a receiver, and to preserve not only the *corpus,* but the rents and profits for the satisfaction of the debt. When justice requires this course to be pursued, and it is resorted to by the mortgagee, it will give him ample protection. There is no necessity, therefore, in order to protect him from injury, that a party, in order to have the benefit of an appeal, should be obliged to give security to account for the intermediate rents and profits of his own property."

In *Grant v. Phoenix Life Ins. Co.,* 121 U. S. 105, 116, it was declared that a court of equity has the

power, before sale in a foreclosure suit, to appoint a receiver of the property involved in litigation, and thus deprive the mortgagor of its use and of its rents and profits, even where the trust deed or mortgage did not embrace the rents and profits of the property as a part of the security. *Kountze v. Omaha Hotel Co.* was cited to the point.

In *Waterman v. Mackenzie*, 138 U. S. 252, the court said that while a mortgage of real estate is now pretty generally in this country considered as mere security for the debt, creating only a lien and leaving title in the mortgagor, yet everywhere it is considered as passing title in the land, so far as may be necessary for the protection of the mortgagee, and to give him the full benefit of his security, and even against the mortgagor in possession the mortgagee may obtain an injunction or damages for such cutting of timber as tends to impair the value of the mortgage security.

In *U. S. Trust Co. v. Wabash Railway*, 150 U. S. 287, the court remarked that if the mortgage there under consideration had conveyed the earnings and rentals of the property, and those had constituted a part of the estate conveyed as security for the bonds, there would be some reason for saying that the mortgagee would be entitled to recover these earnings and rentals before it demanded possession of the road, which was the mortgaged property. But the court concluded that the better doctrine, as established by its previous decisions, was that even where a mortgage covered rents and profits, and the mortgagor was in default, and for such default the mortgage provided that the trustee or mortgagee should take possession of the road, until regular demand was made for the payment of the encumbrance by the defendants, the mortgagor was not obliged to account therefor. The court concluded, citing *Kountze*

*v. Hotel Co.*, that the substance of the rulings of the various cases is that until the mortgagee asserts his rights under the mortgage to the possession of the road by filing a bill of foreclosure, or by demanding possession of some third party who is in possession, he has no right to its earnings and profits; thereby clearly indicating that in a proper case, where equitable rights are asserted by the mortgagee, he may, upon filing a bill for foreclosure and before decree and sale, have the rents and profits sequestered to wait final determination of the case.

In *McGahan v. Nat. Bank of Rondout,* 156 U. S. 218 (S. C. official reports), the court, speaking by Chief Justice Fuller, said that, as between mortgagor and mortgagee (and that is the case in hand), whether the mortgage be regarded as passing the legal estate or as giving merely a lien for the debt, the right of the mortgagee to be protected from the impairment of his security is alike recognized, citing Jones on Mortgages, § 684. And the learned Chief Justice added that it may be conceded that the mortgagee is not entitled to rents and profits unless a lien thereon is reserved in the mortgage, and referring to *Teal v. Walker* said that where a mortgagee may have the right to take possession upon condition broken, if he does not exercise the right he cannot claim rents, again indicating that if the mortgagee had availed himself of his equitable right to preserve or impound the rents, relief could be given.

In *Freedman's Saving & T. Co. v. Shepherd,* 127 U. S. 494, Mr. Justice Harlan said that it was competent for the parties to provide in the mortgage for the payment of rents and profits to the mortgagee while the mortgagor remains in possession, and that when the mortgage contains no such provision, and even where the income is expressly pledged as security for the mortgage debt, the general rule is that

the mortgagee is not entitled to the rents and profits of the mortgaged premises until he takes actual possession, or until possession is taken in his behalf by a receiver, or until in proper form he demands and is refused possession, and he refers to *Kountze v. Omaha Hotel Co., supra,* as authority for the proposition that courts of equity, where the debtor is insolvent and the mortgaged property an insufficient security for the debt, may appoint a receiver to take charge of the property, not only to preserve the *corpus,* but the rents and profits, to the satisfaction of the debt.

The mortgagor lays much stress upon *Amer. Nat. Bank v. Northwestern Ins. Co., supra,* as enunciating the doctrine that under a statute like ours a mortgagee cannot maintain a right to have rents and profits applied to the satisfaction of his mortgage debt, because the rents belong to the mortgagor, and the mortgage is not a lien thereon, nor will the appointment of a receiver for the purpose of collecting the rents create an equitable lien in favor of the mortgagee. If such was the announcement in that case, it was *obiter,* the court expressly saying that the record in the case before it did not show that any part of the rents collected by the receiver was used in payment of the original mortgage debt; but, on the contrary, the money paid to him as rental was expended in repairing the mortgaged premises, in keeping up insurance, and in paying taxes. For such purposes it was said that a receiver might be appointed, but whether he could be appointed for the purpose of sequestering rents and profits to be applied to the satisfaction of the mortgage debt was not in that case, and was expressly eliminated. But, if it was there decided, the case would not be authority, for it is contrary to the rule announced by the

supreme court of the United States in the cases to which we have already adverted.

In an early case in California—*Guy v. Ide, supra* —it was said that as their statute, of which ours is a copy, forbids a mortgagee from recovering the mortgaged estate, the same reason does not there exist as under the English rule for appointing a receiver to collect the rents and profits pending the litigation. The authority of this case seems somewhat shaken by subsequent decisions of the same court, though possibly subsequent statutes may account for the change. But in *Fogarty v. Sawyer, supra*, it was said that the language of the statute, of which ours is a copy, was intended merely to control the terms of grant, bargain and sale generally employed in mortgages, and was not intended to prohibit separate stipulations between the parties for possession.

In *Sacramento & P. R. R. Co. v. Superior Court,* 55 Cal. 453, in a proceeding which, like the one under consideration, was in the nature of a suit to enforce specific performance of the terms and conditions of a mortgage, it was held that a receiver might be appointed by the court to collect the income and profits of the mortgaged property even though the mortgagee had not filed a bill for foreclosure. This was where the mortgage, as here, specifically pledged the income and profits of the railroad company as part of the security for the mortgage debt.

In *Montgomery v. Merrill*, 65 Cal. 432, the mortgage of land included the rents, issues and profits thereof. In proceedings for foreclosure a receiver was appointed, and at the sale thereunder the sum bid was insufficient to satisfy the mortgage debt. Held, that the mortgage was a lien upon the crops growing upon the mortgaged premises, and the proceeds of its sale by the receiver should be applied to the payment of the deficiency. This would seem to

be against the doctrine announced in *Guy v. Ide,* *supra.*

In *Simpson v. Ferguson,* 112 Cal. 180, the court quotes with approval Jones on Mortgages, that upon a bill in equity to obtain foreclosure and sale, the mortgagee in proper cases may apply for the appointment of a receiver to take possession of the earnings of the mortgaged property.   The same principle is recognized in *Freeman v. Campbell,* 109 Cal. 360.

In *Merritt v. Gibson,* 129 Ind. 155, it was held where lands are sold at a mortgage sale, and the mortgage creditor is the purchaser, if he shows that the mortgaged lands are inadequate to secure the debt and the debtor is insolvent, and that the lands are in actual occupancy of tenants who are to pay rent therefor, a court of equity may appoint a receiver to collect rents and profits accruing from such lands and hold them till the expiration of the year allowed for redemption, subject to the order of the court, to be paid to the debtor if he redeems, or to the mortgage creditor if no redemption is made.   The Indiana statute gave to the mortgagor not only possession and right of possession before and after default, but also the right to redeem during an additional year after foreclosure sale.   The opinion, though not unanimous, contains an exhaustive examination of the doctrine under consideration.

The earlier Michigan cases, above referred to, apparently bear out the mortgagor's contention.   In *Preston v. Young,* 46 Mich. 103, it was said that where a mortgagor intentionally or deliberately puts his mortgagee in possession, the possession of the latter is rightful.   This would seem to be not entirely in consonance with the earlier doctrine.   In *Morse v. Byam,* 55 Mich. 594, it was ruled that though by statute the mortgagee of lands is not entitled to

possession until after foreclosure, this was a provision for the benefit of the mortgagor, and he is not obliged to insist upon it; and if, in mortgaging his lands, he gives a deed which in form is absolute, he thereby conveys the right to possession, and consents to the mortgagee taking possession. This is a departure from the rule theretofore announced that the statute absolutely forbade the mortgagor from making a contract giving the right of possession to the mortgagee before foreclosure and sale.

In *Byers v. Byers*, 65 Mich. 598, which indicates a relaxing of the strict doctrine, it was said that defendant merely as mortgagee could not, under the statute, demand or enforce possession, but if the mortgagor chose to put him in, the tenancy is at least good as a tenancy at will.

In *Mich. Trust Co. v. Lansing Lum. Co.*, 103 Mich. 392, it was said that it had never been the policy of the Michigan laws to divest the mortgagor of possession until foreclosure and the expiration of the period of redemption, and while the court was of opinion that it was within the power of the parties to stipulate that such possession might precede foreclosure, and in such case a court of equity may enforce specifically such an engagement, yet such power should be exercised with a full recognition of the settled policy of the state, and should not be exercised except in a case where the right is clearly given by the engagement of the parties. If the mortgagor, by special contract, may stipulate away his statutory right to retain possession until after foreclosure and sale occur and redemption is lost, it would seem a logical deduction that the right to rents and profits, which are but an incident of the right to possession, might, in like manner, be yielded up to the mortgagee.

In *Kelly v. Bowerman,* 113 Mich. 446, an assignment of rents of mortgaged property to be received by the mortgagee and applied upon the mortgage, was considered valid.

In *Hyman v. Kelly,* 1 Nev. 179, under a statute exactly the same as that of California, the court refused to follow *Guy v. Ide,* and held that it did not deprive the mortgagee of any portion of the relief which is usually granted in foreclosure suits where the sale of the property is sought; and that where, as in the case in hand, there was an allegation that the property mortgaged was insufficient to pay the mortgage debt, and the mortgagor was insolvent, and if in addition it appears that there was a specific pledge of the rents and profits to keep down the interest, and they were being diverted, the case made was one for the appointment of a receiver, and the ultimate application of the rents and profits to the satisfaction of the mortgage debt. The case is an instructive one in support of the conclusion which we have reached.

In *Schreiber v. Carey,* 48 Wis. 208, the conclusion was that, under the laws of that state, the mortgagor of lands holds the legal title until foreclosure and sale; yet in a proper case, when necessary to protect the mortgagee's interests, equity will appoint a receiver of the rents and profits of the real estate mortgaged. The court comments upon the earlier Michigan and California cases, and declines to follow them, saying that it finds no courts in the country which deny the power except in those states.

In New York, which has a similar provision to ours with reference to the lien of a mortgage, it has invariably been held that a court of equity has the power to appoint a receiver of rents and profits of mortgaged premises when they are an insufficient security and there is no other adequate remedy.—

*Hollenbeck v. Donnell,* 94 N. Y. 342; *MacKellar v. Rogers,* 52 N. Y. Super. Ct. 360; *Bryson v. James,* 55 N. Y. Super. Ct. 374.

In Oregon, whose statute is exactly like ours, the supreme court, in *Roberts v. Sutherlin,* 4 Ore. 219, held that a mortgagor might place his mortgagee in possession of the mortgaged premises, if he chose to do so, which in no wise would conflict with the rule that a mortgage is simply a security for a debt, and vests in the mortgagee no legal title in the mortgaged premises.

In *Couper v. Shirley,* 75 Fed. 168, in a foreclosure suit, Hawley, Justice, observed that under the provisions of the Oregon statute the parties to a real estate mortgage have no power to bind the courts, independent of any equitable condition which might be shown to exist, by any stipulation contained in the mortgage for the appointment of a trustee or receiver to take charge of the rents and profits pending foreclosure. This observation implies that, if equitable conditions such as are present in this case were shown to exist, a receiver might be appointed, though not because the parties had stipulated for it. The case went off solely upon the proposition that the stipulation of the parties could not bind the court, and it was expressly said that the appointment of a receiver was not sought upon any of the established general principles of equity which, when alleged to exist, would authorize a court of equity to appoint a receiver.

In *Lowell v. Doe,* 44 Minn. 144, the true ground upon which the appointment of a receiver to collect rents of mortgaged property for application to the reduction of the mortgage debt may be made, is stated. The court said that the exercise of this power is not based upon the ground that the legal title has passed from mortgagor to mortga-

gee, but upon the equitable rights of the mortgagee to have his security preserved, so that it should be adequate for the satisfaction of the mortgage debt, the court observing that this power in fact was exercised in favor of those who had no legal title.    In Minnesota, as here, the statute expressly declared that a mortgage of real property shall not be deemed a conveyance so as to enable the mortgagee to recover possession without a foreclosure. The Minnesota court, as did the supreme court of Wisconsin, declined to follow the Michigan and California cases, and referred with approval to the New York cases and to *Pasco v. Gamble,* 15 Fla. 562.    The opinion in the latter case is a full and able discussion of the principles involved in the pending case.

*Phillips v. Eiland,* 52 Miss. 721, also is authority for the appointment of a receiver of rents and profits *pendente lite* in a bill for a foreclosure, where the showing is that the mortgaged property is insufficient security and the mortgagor is insolvent.

Cases from other states are to the same effect, though their statutes are different from ours.    In chapter 33, sections 1516 *et seq.* (5th ed.), Mr. Jones, in his valuable work on Mortgages (vol. 2.), says that the prevailing rule in those states in which the legal title is regarded as being in the mortgagor until foreclosure is that a receiver will be appointed upon the application of the mortgagee, upon default, without reference to his legal rights, whenever sufficient equitable ground for this relief is shown; which is, in general, that the premises are an inadequate security for the debt, and the mortgagor, or other person who is liable for the debt, is unable to make good the deficiency.    Additional equitable grounds are stated by the learned author, and in a note to section 1516 the author says that the practice of appointing a receiver is chiefly confined to those states where,

as in Colorado, the mortgagee's right of entry upon default is taken away.

We think the prevailing rule, as stated by Jones, is the one that should be followed in this jurisdiction. In the case in hand the equities are peculiarly strong in favor of the mortgagee. In consideration of obtaining, as additional security for the mortgage debt, the rents and profits of the encumbered premises, the mortgagee released other security which he theretofore held. He relieved the heirs of any personal liability for the debt, and relinquished his adjudicated claim against the estate. The independent stipulation or agreement in the mortgage by which the rents and profits were specifically pledged was inserted at the request of the administrator himself, who applied for, and obtained, an order of the county court, to whose mandates he was amenable, for permission to mortgage the rents and profits, upon the faith of which order and agreement the mortgagee made the foregoing relinquishment of additional securities.

With the decree made by the district court both parties are dissatisfied, but we think it should be affirmed, with the modification hereinafter made. The authorities which we have followed agree that so long as the mortgagee does not take some effectual step to regain possession, and while the mortgagor is in actual possession, the latter and not the former is entitled to the rents and profits. Applying that doctrine to the present case, it would seem to follow that the mortgagee's right to the rents and profits should be limited to those accruing after the filing of the suit to foreclose the mortgage, which was the first attempt by the mortgagee to gain possession and prove his rights.

The judgment of the district court should be affirmed with the modification that the mortgagee's

right to the rents and profits should begin on the date of the filing of the suit to foreclose the mortgage, instead of May 12, 1902, the date of the foreclosure decree, and it is so ordered.

*Modified and affirmed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE STEELE concur.