ELMIRA MECHANICS' SOCIETY OF NEW YORK v. STANCHFIELD et al.

(Circuit Court of Appeals, Eighth Circuit. March 18, 1908.)

No. 2,636.

1. MORTGAGES—FORECLOSURE—RIGHT TO RECEIVER UNDER COLORADO STATUTE.

Mills' Ann. Code Colo. § 261, which provides that "a mortgage on real property shall not be deemed a conveyance, whatever its terms, so as to enable the owner of the mortgage to recover possession of the real property without foreclosure and sale," as construed by the Supreme Court of the state, does not deprive a mortgagee of the right, under the established rule of equity jurisprudence, where the mortgagor has become insolvent and defaulted in making payments of interest and taxes, and the security is inadequate, and the property exposed to waste and deterioration, to the appointment of a receiver in a suit to foreclose to collect the rents, pay the taxes and insurance, and keep the property properly repaired.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 35, Mortgages, §§ 1374, 1375.

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

2. SAME—RECEIVER—APPLICATION OF RENTS—RIGHT OF ASSIGNEE.

Where a mortgagee, in a suit to foreclose, on a showing of the insufficiency of the security, the insolvency of the mortgagor, and his failure to pay taxes and insurance on the property or to keep it in repair, secures the appointment of a receiver to collect the rents and apply them to such purposes, a prior assignee of the rents from the mortgagor who had notice of the mortgage, although not chargeable with notice of the facts on which the appointment of the receiver was based, holds the assignment subject to the right of the receiver to apply the rents to such purposes, which include an expenditure necessary to keep a building on the property in rentable condition by protecting it from the effect of an excavation on an adjoining lot.

3. SAME—RIGHTS OF PURCHASER AT FORECLOSURE SALE—TAX LIENS ON THE PROPERTY.

A purchaser of real estate at foreclosure sale, "subject to all incumbrances of record," takes subject to taxes which are a lien on the property at the time of the sale, and cannot insist on their payment by a receiver from the rents of the property to which such purchaser is not entitled, until the expiration of the statutory period of redemption, although the taxes became due and payable before that time.

Appeal from the Circuit Court of the United States for the District of Colorado.

In January, 1901, Edward E. Stanchfield, of Denver, Colo., borrowed $7,500 from the appellant, Elmira Mechanics' Society of New York (hereinafter called the complainant), for which he and his wife executed a note due January 15, 1906, with 6 per cent. interest, payable semiannually. To secure this debt, they executed to the complainant a mortgage on various lots of ground in the city of Denver, and in Arapahoe county, Colo. Three of the lots were subject to a prior mortgage of $8,500, which would mature about the 1st of April, 1906, other lots were subject to a prior mortgage of $2,050, and one of the lots was subject to a prior mortgage of $1,000. Some of the lots embraced in the complainant's mortgage were unincumbered, but of comparatively small value. On April 15, 1903, the complainant, at Stanchfield's request, re-

leased its mortgages on the lots in East Denver (which will hereinafter be called "the Flint-Lomax Lots"), on which, at that time, was a matured prior mortgage of $8,500. This was done to permit Stanchfield, through the Brooklyn Realty & Investment Company, organized by him, to place a new first mortgage for said sum on the lots; the complainant then taking a second mortgage from said Brooklyn Realty & Investment Company for its said debt of $7,500. In and by this arrangement the complainant released one S. S. Kennedy, who had assumed the $7,500 mortgage, and by that release it placed the Flint-Lomax five-year lease on the property ahead of the complainant's mortgage. After Stanchfield had thus obtained said money from the complainant and induced it to postpone its mortgages to others on his assurance of the amplitude of the security, he evidently became much embarrassed financially, and became the active promoter and organizer of various corporations, to wit, the Highland Foundry Company, the Pittsburg Foundry Company, the Brooklyn Realty & Investment Company, the Quaker City Investment Company, and the Highland Park, Inn & Sanitarium Company. The legal title of Stanchfield in the property in question, was conveyed to the first of these corporations and by each of the corporations successively to the subsequent organization. The Brooklyn Realty & Investment Company, as a part consideration of the conveyance to it, assumed to pay the antecedent mortgages thereon, and in the deed from the Quaker City Investment Company to the Highland Park, Inn & Sanitarium Company, the latter assumed the payment of said indebtedness. Neither Stanchfield, nor said grantee corporations kept the taxes on the property paid, but suffered them to become delinquent, and part of it sold for taxes. To protect the complainant's junior mortgage, it had to redeem from said taxes. After Stanchfield fell behind in the payment of the accruing interest on his debt to the complainant, and failed to keep the taxes paid, he was urged and pressed by the complainant to make payment of these arrears and protect the property against the overlying mortgages. By deceitful arts and persuasion, he lulled the complainant into indulgence and inactivity by assurances that he was about to effect arrangements by which he could discharge the debt. Failing in this, he dismantled part of the buildings on some of the property of fixtures and appurtenances to the amount of over $1,300, which he sold and pocketed the proceeds. In order to render whatever apparent interest the grantee corporation had in said property available, he negotiated with one William B. Felker, defendant herein, for the purchase of an automobile at the price of $1,650, in the name of the last grantee company, and executed to Felker its note therefor; and to secure the same, on the ——— day of December, 1905, the company executed to him a deed of assignment of the rentals of said Flint-Lomax lots until said note should be paid. In January, 1906, the complainant instituted this suit to foreclose its mortgage, alleging the facts aforesaid, charging that said Stanchfield and companies were insolvent; that the property was an inadequate security for the debts; that the same was being wasted, etc.; and prayed for a receiver to take charge of the property and administer it under the court for the protection of the interests of the parties concerned. A receiver was appointed, took charge of the property, collected the rents therefrom, and applied the same toward the payment of insurance and taxes through the year 1906. There was a decree of foreclosure and sale, at which the complainant became the purchaser, and afterward obtained a deficiency judgment against said Stanchfield for something over $1,200. The order of sale was confirmed December 5, 1906. The deficiency judgment was rendered March 27, 1907. On the 26th day of March, 1907, the complainant presented its petition to the court for rule on the receiver to pay the taxes, insurance, and to make certain repairs on the building. It was also, by this application, represented and shown to the court that, by reason of an excavation being made on the lots adjoining the Flint-Lomax property, for the purpose of erecting a building thereon, the foundation and building on the Flint-Lomax property was seriously endangered, and, unless protected, the building would be exposed to destruction, etc. Notice had been given to the receiver pursuant to the provisions of an ordinance of the city to make said repairs forthwith. The prayer was that the receiver be required to pay therefor the sum of $500, the reasonable cost of the work. This application showed that there

was then in the hands of the receiver the sum of $900. A few days after this application was made, to wit, April 15, 1907, the receiver presented his report, with his resignation, which report was approved, and the receiver was discharged. But the court continued the receivership as to the other property by appointing another receiver therefor. It covered into the registry of the court the unexpended amount of rentals collected by the first receiver; and in its final decree directed the payment of the balance of said rentals to said Felker. From this action of the court, the complainant appealed.

Thomas H. Hood, for appellant.

William L. Dayton, for appellee.

Before HOOK and ADAMS, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge (after stating the facts as above). Two questions are presented for decision on this appeal: (1) Whether the complainant, the mortgagee, under its deficiency judgment against the insolvent mortgagor, under the facts of this case, is entitled to have the rentals of the property in question applied to the payment of the taxes assessed against it and to the payment of the deficiency judgment until possession of the property is obtained by the complainant under the deed of foreclosure; and (2) whether sufficient of the income from the rental of the property under the receivership should have been applied by the court to making the necessary repair on the property to prevent it from destruction or injury.

The statute of Colorado (Mills' Ann. Code Colo. § 261) declares that:

"A mortgage on real property shall not be deemed a conveyance, whatever its terms, so as to enable the owner of the mortgage to recover possession of the real property without foreclosure and sale."

The statute also accords to the mortgagor the right of redemption for a period of nine months after foreclosure sale. The recent decision of the Supreme Court of Colorado in Moncrieff v. Hare, reported in 38 Colo. 221, 87 Pac. 1082, 7 L. R. A. (N. S.) 1001, settles, so far as this court is concerned, the right of the complainant to have a receiver appointed in said foreclosure suit. While conceding, under the said provision of the Colorado statute, that notwithstanding the general grant of the rents and profits in the mortgage deed to the complainant, the mortgagor was entitled to remain in possession of the rents and profits of the premises until foreclosure sale and expiration of the redemption period, yet the court held that said statute would not be so construed as to suspend the better established rule in equity jurisprudence under such a mortgage as this, where the mortgagor has become insolvent, defaulted in making payments of interest and taxes, the security becomes inadequate, and the property exposed to waste and deterioration, on a bill of foreclosure alleging such facts, praying for the appointment of a receiver, for a court of equity to place the property in the custody of a receiver to collect the rents, pay the taxes and insurance, and keep the property properly repaired. The court followed the ruling in such equity procedure, recognized by the Supreme Court of the United States. Teal v. Walker, 111 U. S. 242, 4 Sup. Ct. 420, 28 L. Ed. 415; Kountze v. Omaha Hotel Com-

pany, 107 U. S. 378, 2 Sup. Ct. 911, 27 L. Ed. 609; Grant v. Phœnix Life Insurance Co., 121 U. S. 105, 116, 7 Sup. Ct. 841, 30 L. Ed. 905; U. S. Trust Co. v. Wabash Railway Company, 150 U. S. 287, 14 Sup. Ct. 86, 37 L. Ed. 1085; McGahan v. National Bank of Rondout, 156 U. S. 218, 15 Sup. Ct. 347, 39 L. Ed. 403.

In the course of its opinion, the court made reference to the case of American National Bank v. Northwest Insurance Company, 89 Fed. 610, 32 C. C. A. 275, invoked by the respondent. After suggesting that anything said in that opinion, to the effect that such rents under the receivership might not be applied to the payment of the principal debt, was a mere dictum, the court expressly said it would follow the ruling of the Supreme Court of the United States, as indicated in the cases supra. As this is a construction placed by the Supreme Court of the state on the state statute, and the procedure in a foreclosure suit affecting real property, this court is bound to follow that ruling in a case in pari materia.

That the facts existing at the time of the institution of the foreclosure suit warranted the appointment of the receiver, directing the application of the rentals collected by him to the payment of the taxes and insurance, does not admit of serious question. Mrs. Stanchfield, one of the makers of the note, had left the state and taken up her residence on Catalina Island, Cal., about as far from process of the court in Colorado as she could get. High, in his work on Receivers, § 666, says that it is only necessary for the mortgagee to show, inter alia, "that the mortgagor or other person who is personally liable for the payment is insolvent, or beyond the jurisdiction of the court, or of such doubtful responsibility that an execution against him for the deficiency would prove unavailing." See, also, Southern B. & L. Association v. Carey, 114 Fed. 288, 52 C. C. A. 174.

Neither Stanchfield nor any of the corporations of which he was the principal organizer paid the interest on the mortgage debts, but suffered the taxes to become delinquent, and stood by while Stanchfield dismantled a portion of the property, covered by the antecedent mortgages, of fixtures, diminishing the value of the security, taking no steps whatever to prevent defaults in the payment of the debts, nor the proper protection of the property against taxes. After Stanchfield, by false assurances and bad faith, had gotten all he could by way of loans on the property and stripping part of it of its fixtures and the like, he decamped to California, and wrote back to the representative of the complainant that he had no further interest in the property. One of the holding corporations went into bankruptcy; and there were some small judgments rendered against the Brooklyn Realty Company and other subsequent corporations, after they had conveyed the corporation property to another company. These judgments were unsatisfied. The fact that there was lack of proof of execution and return of nulla bona but indicates the practical fact that this company had assumed the payment of all these antecedent debts upon this property. And as all the shares of stock, with the exception of barely sufficient to qualify other parties as directors, was in the name of Mrs. Stanchfield, the situation would certainly indicate that the Brooklyn Realty Company

was "of doubtful responsibility." In Terry v. Tubman, 92 U. S. 160, loc. cit. (23 L. Ed. 537) the court said that while a judgment and execution unsatisfied are only evidences of insolvency, it added, "the fact may be established as well by other evidence and in other modes, by an assignment, and continued suspension of business, or other notorious indications." And it is recognized in commercial law that the failure of a corporation to pay its debts, or obligations as they mature and after judgment, is suggestive of insolvency. New Britain Nat'l Bank v. A. B. Cleveland Co., 91 Hun (N. Y.) 454, 36 N. Y. Supp. 387.

The Brooklyn Realty & Investment Company conveyed the Flint-Lomax lots to the Quaker City Company by deed January 11, 1904, and by separate deed January 11, 1904, it conveyed the other mortgaged property to the Quaker City Company. The Quaker City Company conveyed all the property outside of the Flint-Lomax lots to the Highland Park, Inn & Sanitarium Company by deed April 11, 1905. There were three judgments rendered against it after these conveyances, one May 6, 1905, for $258.28 and costs; another of January 16, 1906, for $171.15, and executions were returned unsatisfied; and a third judgment of January 25, for $314.90 and costs. It is true, it still retained the title to the Flint-Lomax property, but the creditors were advised by record that there was a blanket mortgage on this property for $14,-486, and that it was subject to prior incumbrances of $49,200. The history of the Highland Park, Inn & Sanitarium Company is as follows: It was first organized as the Highland Company, which seems to have never done anything but incur debts and fail to pay taxes; and as its business enterprise was a failure, its managers sought to organize it into a sanitarium company, against which the neighboring property owners protested, and it was put out of business under a city ordinance. The Highland Park, Inn & Sanitarium Company never filed its corporation articles with the recorder of the county.

This brings us to the crucial question presented by this appeal. As shown in the statement of facts, on October 23, 1905, Stanchfield negotiated with Felker for the purchase of the automobile in the name of the Quaker City Investment Company. As security for the debt it assigned the rents of the Flint-Lomax property. At that time, this grantor company was entitled to the possession of the property and the enjoyment of the rentals thereof until that possession should be legally divested. In taking said assignment, the rights and equities of the assignee must be viewed as matters then appeared of record. Felker's testimony was that while he knew this property was "much mixed up," he employed competent counsel to examine into the right of the company to make the assignment, and relied upon his advice. Said attorney testified that he examined the records, and discovered the various mortgages and deeds of conveyance touching this property; and in good faith advised Felker that the assignment of the rents to him as security would be good under the statute of the state. What then was the extent of the notice and information Felker had through his attorney? The general rule is that notice of facts and circumstances which puts a man of ordinary business intelligence and prudence on inquiry is equivalent to knowledge of all the facts a reasonable pursuit would disclose; and whatever is notice sufficient to

excite attention and put a party on his guard, inviting inquiry, is regarded as notice of everything to which a reasonable prosecution of such inquiry will develop. But in the absence of proof of some fact aliunde to excite such inquiry, where the title affecting real property is a matter of record in the registry of the county, an attorney is not required to look beyond the record to see what the chain of title is to discover how the interest or estate of the grantor might be affected. It is to be conceded to the complainant that said attorney had notice of the provisions of the first mortgage on the property for $8,500, which held precedence over the complainant's mortgage. That prior mortgage not only pledged the "rents, issues, and profits" of the premises to the holder of the mortgage note after default, but it expressly provided that upon default, a receiver might be appointed "and all rents, issues, and profits, income and revenue of said property shall be applied by said receiver according to law upon the orders and directions of the court." Unquestionably, had foreclosure proceedings been instituted after default under this mortgage, the receiver appointed therein would have been entitled to apply the accruing rents, not only to the payment of taxes, insurance, and repairs, but to the debt itself. While, in order to protect its junior mortgage, the complainant, in December, 1905, paid of matured interest coupons on said first mortgage to the amount of $530.57, and in April, 1906, paid off said first mortgage debt, and might have taken an assignment of the note and mortgage, or been subrogated to the rights of the mortgagee thereunder; yet it brought suit alone upon its junior mortgage in January, 1906, without even amending its bill to seek relief under the provisions of the first mortgage. It can, therefore, obtain no other relief than such as rightfully comes through the predicate of the suit brought.

The other notice conveyed to Felker, through his attorney by the record examined, was the conveyances in question, and the assumption of the mortgage debts by some of the grantees. If it be conceded that at the time of the institution of suit, the assuming grantees were in fact insolvent, it would be predicated in part of evidence in pais, and of unsatisfied judgments in justices' courts, one of which was filed in the clerk's office of the district court, most of which were subsequent to the deed of assignment to Felker. The insolvency of the corporation was not imparted by the record in the register's office; and as the attorney was not required to carry his investigation through all the records of the nisi and other courts of the county, or make inquiries in pais, and without evidence that he knew of the nonresidence, or the insolvency of Mrs. Stanchfield, we must hold that the evidence of insolvency of all the parties bound upon the debt at the time of the assignment to Felker was insufficient to affect him with the requisite notice. However, as the appointment of the receiver and the foreclosure proceedings, on the allegations of the bill and the facts as they then stood were proper, the application of the rentals to the payment of insurance and taxes under the receivership cannot be gainsaid by Felker, nor their application to keeping the premises in proper repair to be habitable in order to produce rent.

In American National Bank v. Northwestern Mut. Life Ins. Co., supra, Judge Shiras said:

"When the receiver was appointed, the mortgagors could well claim that, as they had been thus prevented from receiving the rentals of the property, they would be excused in equity from any further personal liability to pay the taxes and insurance, and that the obligation to thus protect the property was assumed by the receiver, to the extent of the rentals by him received. The receiver was appointed by the court for the purpose of protecting the property in the interest of all who held a title thereto or a lien thereon, and the proper protecting of the property required that it should be kept insured; that the taxes thereon should be paid; that the building should be kept in repair, and in condition to assure its occupancy; and, if the receiver was justified in making the outlay necessary to thus protect the property, he certainly must be protected in applying the rental in his hands to the payment of the cost thereof."

In respect to the taxes claimed in the application made to the court for an order on the receiver to pay, it is sufficient to say, those taxes were not due and payable under the statute until about the 1st of February, 1907. As such, they constituted only a lien on the property at the time of the foreclosure sale, which occurred the latter part of 1906. The sale was made "subject to all incumbrances of record" and therefore the complainant, as purchaser, took it cum onere as to the taxes of 1906. Traer v. Fowler, 144 Fed. 810, 814, 75 C. C. A. 540; Davis v. Dale, 150 Ill. 239, 37 N. E. 215; Stevens v. Hadfield. 90 Ill. App. 405; 2 Wiltsie on Mortgage Foreclosures, p. 361. But the court erred in refusing to direct the receiver to apply of the rental money in his hands the sum of $500 to the shoring up and protection of the property against the lateral excavation being made. By ordinance of the city, it was made the duty of the owner of the endangered property, on notice, to take steps to safeguard his foundation and supports. This is but expressive of the common law which declares that the owner has the right to the lateral support for his own from his neighbor's land in its natural condition, but he has no such right to support for buildings or other structures upon it, and the burden is imposed upon the owner of protecting his building against excavations which the adjoining proprietor may make on his own land in a proper manner. 18 Am. & Eng. Enc. Law, 542, 552. Instead of the receiver, when notified, taking this action, as if acting in the interest of Felker, he resigned his receivership. But as the court had the money arising from the rentals in its control, it should have applied the amount, which the evidence showed was $500, for that purpose. Of what avail would the right of the assignee to the rentals be, unless the property were so protected as to keep it inhabited that rentals might come therefrom? As Felker did not propose to care for the matter, and the question having been tried out before the court on the application as to the extent of the damages to the freehold, that amount should be awarded to the complainant out of the fund in the registry of the court.

The appeal in this respect is therefore sustained, the decree below entered April 15, 1907, is reversed, and the case is remanded to the Circuit Court with directions to set aside its order denying the application for the appropriation of the said sum of $500, and order

that sum paid to the complainant out of the funds in the registry of the court, with interest thereon at the rate of 6 per cent. per annum from the 15th day of April, 1907, when the application was made and the money should have been paid.