pipe lines, (chapter 203 of 1878, §§ 1, 20.) The president of the company, however, testifies that it is the intention of the corporation to carry all freight that may be offered, of the kind it can carry, up to the extent of its capacity. In other words, it is intended that the corporation shall be a public one in the nature of a highway. What action the board of directors as such may have taken on the subject does not appear. So that apparently there is nothing to prevent the board of directors, or some future president, from having a different view. The plant of the company has cost about $50,000, so that the capital is substantially exhausted. Nothing is shown as to the means of the company for enlarging its boundaries, or increasing its facilities. The true criterion by which to judge of the character of the use is whether the public may enjoy it by right or only by permission. Mills, Em. Dom. § 14; *Kettle River R. Co.* v. *Eastern Ry. Co.*, 41 Minn. 461, 43 N. W. Rep. 469. The undertaking of a common carrier is to carry for all people indifferently. 2 Kent, Comm. 598. If, in the present case, there is no access to the southerly terminal except over a private road, then the public cannot at that end use the cable except at the will of the owner of such private road, or of the Solvay Company, the owner of the surrounding territory. So, if the cable company is run subservient to the interest of the Solvay Company, and the general public have no opportunity to use it, except as there may be a surplus capacity after supplying the uncertain and increasing wants of the Solvay Company, then the cable company is not in the position of a common carrier. The service of the Solvay Company is the main object, the service of the public is subordinate and contingent. For such a service, the right of eminent domain should not be exercised. *In re Eureka, etc., Manuf'g Co.*, 96 N. Y. 42; *In re Niagara, etc., Ry.*, 108 N. Y. 375, 15 N. E. Rep. 429. As said by RUGER, C. J., in *Re Staten Island Rapid Transit Co.*, 103 N. Y. 257, 8 N. E. Rep. 548: "The exercise of this power is in derogation of individual rights, and is always burdensome, and often injurious, to the owner beyond the power of pecuniary compensation to wholly redress, and should be allowed only when the necessity for the land clearly appears, and its proposed use clearly embraced within the legitimate objects of the power." Having in view the manner and form of the organization of the petitioner, and its subsequent acts, the location of its southerly terminus, and the absence of public approach, its private use thus far, and the lack of opportunity for the public to use, except after the wants of another company are supplied, and its apparent subserviency to the interests of that company, and the contingent and uncertain character of any future developement for the benefit of the public, we are of the opinion that the evidence does not establish the conclusion that the taking, here sought to be made, is for public use. It follows that the order should be reversed, and proceedings dismissed, with costs. Code Civil Proc. § 3240; *In re Eureka, etc., Manuf'g Co.*, 96 N. Y. 42, 49; *In re New York, L. & W. Ry. Co.*, 26 Hun, 592. All concur.

---

WILLIS *et al.* v. SHARP.

(*Supreme Court, General Term, Second Department.* December 10, 1890.)

1. RECEIVERS—LIABILITIES—UNAUTHORIZED PAYMENTS.
  After judgment in an action against an executor, a receiver of the estate was appointed, and directed to pay the judgment out of the funds transferred to him. The receivership was afterwards extended, by order, to judgments recovered against the executor in a second suit by the same plaintiffs, and in a third suit by other parties, and the receiver was directed to pay those judgments out of the fund, after reserving the amount of the first judgment, from which an appeal had been taken; but he paid out the whole fund, less his commissions, etc., on the two later judgments. All the suits were brought by the same attorney. *Held*, that on the reversal, on appeal, of the original order appointing the receiver, as erroneous, though not void, the receiver must restore to defendant the amount of such two judgments so paid by him.

**:2. SAME—COSTS OF RECEIVERSHIP.**
　　Plaintiffs in the first suit should be held liable for the expenses of the receivership, and should also restore the amount of their second judgment.

Appeal from special term, Kings county.

Action by William P. Willis and William H. Townsend against Aurelius ·S. Sharp as executor of Fida C. Sharp, deceased, in which plaintiffs recovered judgment, and a receiver of the estate in the hands of defendant, as such ·executor, was appointed. Upon the reversal, on appeal, of the order appointing the receiver, a motion was made by defendant to require the receiver and plaintiffs to restore the fund transferred to the receiver. The following opinion was rendered on the motion for restitution at special term, by CULLEN, J.:

"In suit No. 1 between these parties, Mr. Ritch was appointed receiver of the estate in the hands of the defendant, as executor, and out of such funds ·directed to pay the judgment previously recovered. From the order appointing such receiver, and directing the transfer of the fund to him, the defendant appealed, and the order was reversed by the court of appeals. 22 N. E. Rep. 149. Pending the appeal, the defendant complied with the order, and transferred the fund to the receiver. During this period, the plaintiff instituted a second suit, and the creditors, Cutter *et al.*, instituted a third suit against the defendant. By the judgments recovered in these two last-named actions, the prior receivership was extended, and the receiver directed, out of the funds in his hands, after reserving the amount of the first judgment, (then on appeal to the court of appeals,) to pay the amounts of such judgments. This application is that the plaintiffs in this action and the receiver restore to the defendant the whole fund so transferred. The answer made to the application is that the receiver has paid out the whole fund, less his commissions, etc., on account of judgments in action No. 2, and in *Cutter et al.* v. *Sharp,* ·and that such judgments have not been appealed from, but remain in full force. While the order appointing the receiver was reversed, the court of appeals do not seem to have held it void. I shall assume, therefore, it was valid though erroneous. If this view be correct, the receiver, being an officer of the court, should not be liable personally where he has complied with the orders of the court, but the defendant should look for restitution to the plaintiffs, who have received the fund. But it appears here that the receiver, instead of paying the judgment in *Willis* v. *Sharp,* No. 1, or retaining moneys sufficient for the purpose, paid out all the fund on account of judgment No. 2, and judgment in *Cutter* v. *Sharp.* As the plaintiffs' attorney was the same in all these actions, I assume it was with the assent of the parties, and it may be suspected that this was done to avoid the effect of an adverse decision on the appeal in this action, as no appeal was taken in No. 2, nor in *Cutter* v. *Sharp.* Nevertheless, this was not authorized, but in contravention · of the terms of the orders and judgments of this court, and the defendant cannot be prejudiced thereby, as it is not alleged that he assented to it. The receiver must therefore restore the amount of such judgments, with interest from the time of the judgment, and look for indemnity to the parties who induced this action.

"The next question is as to the liability of the plaintiffs to make restitution. They instituted the proceeding, but, unless the receivership was void, I think they should not be liable for the whole fund, regardless whether they have had the benefit of it. They should be held liable for the expenses of the receivership, in my opinion, for the reason that they instituted the proceedings for the collection of their judgment, and the case is analogous to the recovery of money paid to the sheriff on the execution on a judgment subsequently reversed, where it would seem that recovery can be had for the whole sum paid on the execution, which would include the sheriff's fees. *Kidd* v. *Curry,* 29 Hun, 215; *Sturges* v. *Allen,* 10 Wend. 354. In action No. 2, the judgment did not provide for a receiver of the estate, and the payment of the

recovery by the receiver. That was directed by an order made subsequent to the judgment. The money had already been taken from the defendant, by the order in this action. That order has been reversed. As it was the foundation of the proceeding by which the plaintiffs obtained the amount of the second judgment, I think, on its reversal, the title of plaintiffs to the moneys fails, and they should make restitution. The motion granted to the extent indicated, with $10 costs. As to the remainder of the sum paid over to the receiver, the defendant must proceed against Cutter *et al.*"

From the order entered on this decision, plaintiffs and the receiver appeal. Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

*Walter S. Logan,* for appellants. *Alexander V. Campbell,* for respondent.

DYKMAN, J. The order appealed from should be affirmed, with $10 costs and disbursements, on the opinion of the judge at special term.

---

## In re MAHONEY.

(*Supreme Court, General Term, Second Department.* December 10, 1890.)

1. WILLS—TESTAMENTARY CAPACITY—EVIDENCE.

During a considerable time before the execution of his will, testator had been seriously ill, and, immediately before its execution, he had fainted and lost consciousness for a short time through feeble action of the heart. On recovering, he slept, and awoke much refreshed. The will, previously prepared, was then produced by his physician, and testator, sitting up in bed, without assistance, read the will, and expressed his satisfaction with it; and, in the presence of the physician and nurse, he signed the will, and requested them to sign as witnesses, which they did. On the day following he spoke to others of the disposition made of his property, expressing his satisfaction with it. The will was natural, under the circumstances, and in accordance with his previously expressed intentions. The testimony of the physician and nurse, who were with testator constantly, and who were entirely disinterested, was clear, and showed him to have been in full possession of all his mental faculties, and was corroborated by others. Some of the witnesses testified that testator was flighty at times, and had mental aberration, but this evidence did not apply to the time of making the will. *Held,* that his testamentary capacity was abundantly established.

2. SAME—UNDUE INFLUENCE.

The will was prepared, without direction from him, in accordance with his intentions previously communicated to the person who procured it to be drawn, and was delivered by such person to another, with instructions to give it to some disinterested person to present it to testator for execution, if it met his wishes. It was given to his physician, and was by him presented to testator. Testator's relatives had been requested, before its execution, to leave the room, in order that testator might obtain needed sleep. After the execution of the will, they returned, and he conversed with them all. The physician and nurse were entirely disinterested, and no interested person spoke with testator on the subject; and the circumstances showed that there was no preconceived purpose, in preparing the will, to forestall his testamentary intention. *Held,* that there was no proof of undue influence.

Appeal from surrogate's court, Kings county.

Petition for probate of the will of Peter Paul Mahoney, by Edward D. Farrell, an executor named therein. From a decree refusing probate, the proponent appeals.

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

*Frederick Smyth,* (*David McClure,* of counsel,) for appellant. *Patrick Keady,* for respondents.

DYKMAN, J. Peter Paul Mahoney, a representative in congress from the city of Brooklyn, died at the Arlington Hotel, in the city of Washington, on the 27th day of March, leaving a last will and testament, which was offered for probate to the surrogate of Kings county, and rejected, and the case comes to us on an appeal from his decree. For some time previous to his death, the deceased was afflicted with fatty degeneration of the heart, and *gastre enterico*