### COUPER v. SHIRLEY et al.

(Circuit Court of Appeals, Ninth Circuit. June 15, 1896.)

No. 271.

1. MORTGAGE FORECLOSURE—RECEIVER OF RENTS AND PROFITS—PUBLIC POLICY.
    A stipulation in a mortgage that, upon the institution of foreclosure proceedings, a receiver of the rents and profits may be appointed on the ap-

plication of the mortgagee, is contrary to the public policy of Oregon, as shown by the statute which provides that a mortgage of real property shall not be deemed a conveyance, so as to enable the mortgagee to recover possession without a foreclosure and sale according to law. Hill's Ann. Laws (2d Ed.) p. 383. Therefore the appointment of a receiver under such a stipulation is void.

2. SAME—COMPENSATION AND EXPENSES OF RECEIVER.

Where the appointment of a receiver of the rents and profits of mortgaged lands pending foreclosure is void, as contrary to the public policy of the state, such receiver. though he renders services and realizes profits, is not entitled to compensation or expenses therefrom, but the same should be paid, if at all, by the party who procured his appointment.

Appeal from the Circuit Court of the United States for the District of Oregon.

On the 26th day of March, 1894, William Thompson, Jr., brought suit in the circuit court of Oregon to foreclose a mortgage on certain farming lands, given by James Q. Shirley and his wife to secure the payment of two promissory notes, each for the sum of $10,000. Several subsequent lien claimants were made parties defendant. In this mortgage it was expressly stipulated "that, in case a bill to foreclose said mortgage shall be filed, the court may, on motion of the mortgagees, or their assigns, appoint a receiver to collect the rents profits arising out of said premises during the pendency of such foreclosure. and until the right of redemption expires, and that such rents and profits shall be applied in payment, pro tanto, of the amount due." On the same day, upon motion of complainant's counsel, pursuant to the foregoing stipulation, the court appointed E. J. Couper. appellant herein, receiver of the rents, profits, and issues of the lands described in the bill of complaint. Thereafter, on July 25, 1894, on motion of the defendants J. J. Balleray and J. L. Rand,— it appearing to the court that E. J. Couper was a party to, and had an interest in the result of, the suit,—an order was made removing him as receiver. Couper held a second mortgage for $2,500, and appeared by cross bill to have it foreclosed. This mortgage contained a similar stipulation as to the right to have a receiver appointed. On October 16, 1894, a decree of foreclosure was entered; and on the 7th of December, 1894, the master in chancery sold the lands, with the result that there was still due on Couper's mortgage the sum of $499. E. J. Couper in the meantime entered upon the duties of receiver, seeded the lands in the spring of 1894, and continued to act as receiver after the order removing him from such receivership, harvested the crops, and marketed the same, and on April 13, 1895, filed his final report and accounts, showing a net result of his acts as receiver of $1,017.93. On May 2, 1895, defendants Balleray and Rand filed their exceptions to this report, showing that James Q. Shirley on December 14, 1894, had mortgaged, transferred. and assigned all of said crops to them to secure the payment of $10,000, then due, and claiming that the order appointing a receiver was made without authority of law; that complainant be required to pay the expenses of such receivership; and that it be decreed that the proceeds in the hands of the receiver go to petitioners Balleray and Rand. The matters in controversy were referred to the master in chancery, who reported that the receiver's account was true, correct, and accurate, and recommended that the account be approved. and that the sum of $600 be allowed the receiver as his compensation, and that the sum of $100 be allowed as reasonable counsel fees for the receiver. The master further found that the mortgage to the defendant Couper was a mortgage of the rents and profits of the property described in the bill, as well as a mortgage of the real estate. He further recommended that the compensation of the receiver and his attorney fees be paid to defendant E. J. Couper, in part satisfaction of his claim. The court disapproved the master's report and recommendations, and ordered the defendant Couper to pay over all moneys in his hands to the defendant mortgagor or his assignee.

John H. Woodward and Charles H. Woodward, for appellant.

J. J. Balleray and Henry Ach, for appellees.

Before McKENNA and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge, after stating the case as above, delivered the opinion of the court.

It must be borne in mind that the appointment of Couper as a receiver was not made by virtue of any of the established general principles of equity, which, when alleged to exist, would authorize a court of equity to appoint a receiver, but was made solely in pursuance of the stipulation contained in the mortgage. The sole question for our consideration is whether such a stipulation, of itself, authorized the court to make the appointment, under the laws of Oregon. The statute of the state of Oregon provides that:

"A mortgage of real property shall not be deemed a conveyance so as to enable the owner of the mortgage to recover possession of the real property, without a foreclosure and sale according to law." 1 Hill's Ann. Laws Or. (2d Ed.) p. 383, § 326; Gen. Laws Or. 1845–64, p. 228, § 323.

This provision of the statute, as was said by the supreme court in Teal v. Walker, 111 U. S. 242, 251, 4 Sup. Ct. 425—

"Gives effect to the view of the American courts of equity that a mortgage is a mere security for a debt, and establishes absolutely the rule that the mortgagee is not entitled to the rents and profits until he gets possession under a decree of foreclosure; for if a mortgage is not a conveyance, and the mortgagee is not entitled to possession, his claim to the rents is without support."

The court further said:

"The case of the defendant in error cannot be aided by the stipulation in the defeasance of August 19, 1874, exacted by the mortgagee,—that Goldsmith and Teal would, upon default in the payment of the note secured by the mortgage, deliver to Hewitt, the trustee, the possession of the mortgaged premises. That contract was contrary to the public policy of the state of Oregon, as expressed in the statute just cited, and was not binding on the mortgagor or his vendee; and, although not expressly prohibited by law, yet, like all contracts opposed to the public policy of the state, it cannot be enforced."

This decision is conclusive of the only question involved in this case. It may be that in states where there is no statute changing, or in any manner abrogating, any of the common-law rules upon this subject, authorities might be found to the effect that the parties to a real-estate mortgage would have the right to make any contract which they mutually agreed upon. But it would serve no useful purpose to discuss that question. It is enough to say that it has been authoritatively settled that, under the provisions of the statutes of Oregon, they have no power to bind the courts, independent of any equitable condition which might be shown to exist, by any stipulation, contract, covenant, or agreement contained in the mortgage for the appointment of a trustee or receiver to take charge of the rents, issues, and profits of the mortgaged premises pending a foreclosure of the mortgage. This must be true, for under such a statute the mortgage does not convey any title to the mortgagee, but is a security merely for the debt; and the mortgagee, before foreclosure, has no legal interest in the lands mortgaged to him, and is not entitled to the possession thereof. The supreme court of Michigan has repeatedly held that inasmuch as the mort-

gagor is entitled, under the statute of that state (Comp. Laws, § 6263), to the possession, and consequently to the rents and profits, of the mortgaged premises, until such time as his title is divested by a perfected foreclosure, it is not competent to cut short his rights in this regard by means of a receiver appointed in the foreclosure suit. In Hazeltine v. Granger, 44 Mich. 503, 7 N. W. 74, the facts were very similar to the case under consideration. The bill for foreclosure of the mortgage set forth that the mortgage secured to the mortgagee a right to the rents and profits after default, and the right to have a receiver appointed without notice. The lower court, when the bill was filed, as in this case, made an ex parte order appointing a receiver to take possession of the premises and dispose of the rents. The mortgagor made a motion to set aside this order, which was refused, and an appeal was taken. The supreme court, in the course of its opinion reversing the court below, said:

"There is no statute which authorizes the court to carry out, ex parte, any private agreement of parties outside of the usual course, or which would render its action valid in any case if it deprived a person of property, or its control, without such a hearing as is required to determine the right. Under the old practice existing at a time when the possessory right was deemed covered by a mortgage, a court of equity would not interfere to grant a receiver unless two conditions coincided: First, that the premises were scanty security; and, second, that the mortgagor was insolvent. Brown v. Chase, Walk. Ch. 43. Even this was regarded as contrary to public policy by our legislature, and in 1843 the old law was changed so as to secure the mortgagor in his possession until a foreclosure had become absolute. The effect of this, as we have several times decided, was to prevent the mortgagee from obtaining under his mortgage any interest beyond that of a security to be enforced only by sale on foreclosure, and to debar him from any right. * * * Every mortgage made in common-law form contains words whereby, if applied as they read, possession would belong to the mortgagee, and his title would become absolute, by default. The whole aim of equity was to arrest this forfeiture, and not to allow the language of a mortgage to have any force against the equity of redemption. The statute is a further step in the same direction for the protection of mortgagors against agreements which, as literally drawn and as theretofore expounded, were deemed dangerous and against public policy."

Appellant claims that it was inequitable for the court, after appointing Couper receiver, to dismiss him without making some provision to pay him for his services and for the expenses by him incurred. The answer is that the court had no authority to make the appointment. It was made ex parte, without discussion. When the question properly came before the court, the receiver was removed. It may be that some provision ought to have been made for his pay, but it is clear to our minds that, upon the facts presented in this case, the party who improperly procured the appointment of the receiver should have been required—if the receiver was entitled to anything—to pay his expenses and services. Certain it is that the appellees, not being responsible for his appointment, could not be held liable; and, as against them, appellant is not entitled to any relief. The judgment of the circuit court is affirmed, with costs.