WESTINGHOUSE ELECTRIC & MFG. CO. v. IDAHO RY., LIGHT & POWER CO.

(District Court, D. Idaho, S. D.   November 10, 1915.)

No. 468.

1. RAILROADS ⬤⟿169—MORTGAGES—LIEN ON INCOME—"REDUCE TO POSSESSION."

The income clause in a mortgage of railway property does not become effective until the trustee either actually or constructively reduces the property to its possession; and the premature commencement of a foreclosure suit, which was voluntarily dismissed, was not such a reduction to possession, although a receivership was extended to it, but was altogether nugatory.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 536–548; Dec. Dig. ⬤⟿169.

For other definitions, see Words and Phrases, First and Second Series, Reduce to Possession.]

2. RAILROADS ⬤⟿169—MORTGAGES—INCOME CLAUSE—POSSESSION BY TRUSTEE.

Rev. Codes Idaho, § 4523, provides that "a mortgage of real property shall not be deemed a conveyance, whatever its terms, so as to enable the owner of the mortgage to recover possession of such property without a foreclosure and sale." Other statutory provisions, however, authorize the appointment of a receiver in a foreclosure suit where the "property is probably insufficient to discharge the mortgage debt." Held that, on commencement of a suit to foreclose a railroad mortgage which contained an income clause, where the mortgagor was insolvent and the property insufficient, thus entitling the trustee to a receiver, the appointment of such receiver would give the trustee such possession as to make the income clause effective; that where the trustee, instead of applying for a receiver, filed a petition in a pending creditors' suit in which a receiver had been appointed, asking that the income be impounded for its benefit, the effect was the same, and gave the trustee a first lien on the subsequent net earnings of the receivership.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 536–548; Dec. Dig. ⬤⟿169.]

3. CORPORATIONS ⬤⟿482—INSOLVENCY AND RECEIVERS—DISTRIBUTION OF ASSETS—STATUS OF MORTGAGEE.

Rev. Codes Idaho, § 4520, provides that there can be but one action for the recovery of any debt or the enforcement of any right secured by mortgage, which action in case of mortgage is defined as a foreclosure suit in which, after sale of the property, but not before, the plaintiff may have judgment, which he may satisfy by execution, but only for the amount of the debt remaining unpaid. Held that, in view of such statutory provisions, on distribution by a federal court of equity in Idaho of the assets of an insolvent corporation, the trustee of a mortgage of property in the state is entitled to share as a creditor in the unmortgaged assets in the hands of a receiver on the basis of the amount of his deficiency judgment only.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1870, 1877–1888; Dec. Dig. ⬤⟿482.]

In Equity. Suit by the Westinghouse Electric & Manufacturing Company against the Idaho Railway, Light & Power Company. On claim of the Guaranty Trust Company of New York, mortgage trustee, to share in distribution of general assets of defendant. Claim allowed in part.

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Perky & Crow, of Boise, Idaho, for plaintiff.

Wyman & Wyman, of Boise, Idaho, and Eldon Bisbee, of New York City, for trustee.

John F. MacLane, of Salt Lake City, Utah, for receiver.

Richards & Haga and Wood & Driscoll, both of Boise, Idaho, for creditors.

DIETRICH, District Judge. The present issues arise in this way: On December 23, 1913, the defendant company was engaged in the electric power and traction business, and was at that time indebted to both secured and unsecured creditors; the securities in the main consisting of a large issue of bonds secured by a trust deed, purporting to cover all of the properties of the company, including its income. Having become financially embarrassed, it was threatened with suits at law, and at least one action was commenced, in which an attachment was issued and levied upon certain of its available assets. On December 23d the plaintiff company, an unsecured creditor, filed a bill, on behalf of itself and all other creditors who might thereafter join in the prosecution of the suit, in which it was set forth that unless a court of equity interposed, and, through a receiver, took charge of and preserved the estate, and marshaled the assets of the defendant for the benefit of all creditors as their interests might appear, there was danger that, through a multiplicity of suits, the public interests would be prejudiced, and, by the dismemberment of the railway and power systems, the value of the assets would be greatly depreciated, to the detriment of the plaintiff and other creditors. The defendant appeared and admitted the averments of the bill, and assented to the appointment of a receiver. Thereupon a receiver was appointed and took charge of the properties.

A few days later the Guaranty Trust Company of New York, the trustee named in the trust deed referred to, commenced a suit to foreclose the trust deed, and thereupon, on its motion, and with the consent of all parties, the causes were consolidated for trial, and the receivership extended to the foreclosure suit. In due course, pursuant to orders made and notices given, numerous creditors intervened in the creditors' suit, and filed their claims; most, if not all, of them contending for a preference over the lien of the trust deed, upon the theory that the claims were for labor and supplies used by the railway company in the operation and maintenance of the property. Some of these were promptly allowed and paid; others were contested. To some of those which were contested a preference was denied, on the ground that they did not accrue within six months prior to the institution of the receivership, or that they did not represent expense of maintenance or operation. The denial of the preference was, however, without prejudice to the right of such claimants to share in the surplus income, if any, over necessary operating and maintenance expenses during the period of the receivership. Among others, the trustee itself filed a petition praying that it be deemed to be a creditor to the full extent of the outstanding issue of bonds, and that it be per-

mitted to share in the fund, if any there should prove to be, applicable to the payment of the general indebtedness of the railway company.

In the meantime, upon consideration, it was held that the foreclosure suit commenced in January, 1914, was prematurely brought, and, pursuant to the ruling, the plaintiff asked for and procured a dismissal of the bill in that suit. This was on the 17th day of December, 1914, and thereupon, namely, upon the same day, it filed a new bill in foreclosure, and caused process to be issued. The dismissal of the first bill was without prejudice to the creditors' suit, or to the receivership instituted therein, or to the status of any proceedings which had been taken or were pending. The trustee did not, upon the commencement of the second suit, seek an extension of the receivership or a consolidation of the new suit with the creditors' suit; but on the 19th day of December, 1914, it filed in the creditors' suit an application praying that the income during the receivership be impounded for its benefit. Except as it is now involved in this hearing, the application was never presented to the court, and no action was ever taken thereon.

On April 19, 1915, a decree of foreclosure was entered, in which it was found and decreed that there had been issued for value, and there were outstanding, bonds of the aggregate face value of $8,449,000, besides interest. Most of these bonds had been sold, and the title thereto had passed to the purchasers; but approximately $1,500,000 thereof had been put out and were held as collateral by divers creditors of the railway company. It was decreed that these bonds constituted a lien upon all the properties and assets of the defendant company, and a special master was appointed and authorized to make sale thereof, pursuant to the directions of the decree, for the purpose of satisfying the bonded indebtedness. The twentieth and final paragraph of the decree is as follows:

"None of the provisions of the decree shall be construed as establishing a lien in favor of the trustee or bondholders upon the income, including earnings uncollected, or any part of the income, earned during the receivership, or foreclosing the claims of general creditors to have such income distributed to them; and in harmony with the theory and understanding of the receiver and the court in applying and permitting to be applied from time to time portions of such income to the discharge of interest upon underlying bonds, indebtedness incurred for construction work, sinking fund, and other non-operating purposes, so much of the funds received upon a sale of the property as are necessary to restore to the receiver the amounts so expended shall be deemed to have the status of operating income arising during the receivership and in the hands of the receiver, the rights of all claimants, including the plaintiff trustee, thereto, to be determined in said cause No. 468."

At the ensuing master's sale the property was sold for $4,542,750 absolutely, and with the further obligation of the purchaser to pay in addition thereto such amount, if any, as the receiver might realize out of a claim which he was asserting to the proceeds of the foreclosure sale of the properties of the Idaho-Oregon Company, which claim was then, and still is, pending on appeal in the Circuit Court of Appeals of this circuit.

Under the provisions of the final paragraph of the decree above quoted the receiver is deemed to have on hand, as a surplus of income,

after discharging the necessary and ordinary current expense of maintenance and operation, $————, and the question submitted for decision is the proper distribution or application of this fund. In the first place, the trustee contends that it is entitled to all of it, by virtue of the provisions of its trust deed purporting to extend the lien thereof to the income of the railway company. It is further contended that, if any of the surplus is subject to distribution, it is only such amount as may have accrued prior to the order of January 19, 1914, extending the receivership to the first foreclosure suit, upon the theory that by the extension of the receivership the trustee is to be deemed to have come into possession of the income. It is still further contended that at most only such part of the surplus as was received prior to the commencement of the second foreclosure suit and the filing of the petition praying that the income be impounded for the benefit of the trustee is available for distribution, upon the ground that if the first suit was ineffective, because prematurely brought and voluntarily dismissed, the commencement of the second suit and the filing of the petition referred to operated to give the trustee constructive possession. And, finally, it is contended that, whatever may be the fund available for distribution, the trustee is entitled to share therein, not on the basis of the residue of the indebtedness remaining unpaid upon the bonds after applying the proceeds of the foreclosure sale, but upon the entire amount of the original indebtedness.

[1] The first general question is: To what extent, if at all, does the lien of the trust deed attach to the fund in the receiver's hands? It is a well-settled and familiar rule that the income clause in a mortgage or trust deed of this character does not become effective until the trustee either actually or constructively reduces the property to its possession. The usual method of acquiring such possession is through the institution of a foreclosure suit and the appointment of a receiver therein. Here the original foreclosure suit was premature, and therefore wrongful, and the extension of the receivership was without right. The voluntary dismissal rendered the whole proceeding nugatory, and the rights of the parties were the same as they would have been if the suit had never been commenced.

[2] Did the filing in the creditors' suit, on December 19, 1914, of the trustee's application to have the income thereafter accruing impounded for its benefit, operate to give it a lien thereon? The answer to this question depends largely upon the effect which we give to certain provisions of the Idaho statutes. If, but for the existence of the receivership in the creditors' suit, the trustee would have been entitled to a receiver in the foreclosure suit, the application referred to may be regarded as the equivalent of the appointment of a receiver in the latter case. Atlantic Trust Co. v. Dana, 120 Fed. 209, 62 C. C. A. 657. Upon the other hand, if, under the statutes of the state the applicant was not entitled through a receiver to acquire possession of the mortgaged property, including the income, then manifestly the filing of the application was ineffective for any purpose. The modern rule that, whatever its form, an instrument of mortgage or trust deed given as security only does not transfer title or confer

upon the mortgagee ·or trustee the right of possession, prevails in this state. Section 4523 of the Idaho Revised Codes provides that:

"A mortgage of real property shall not ·be deemed .a conveyance, whatever its terms, so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure and sale."

There is much reason for the view that, whatever may be the agreement of the parties touching possession and the income of ˙the property, the courts will not, in the face of· such a statute, appoint a receiver for the purpose of enabling the mortgagee indirectly to acquire possession prior to foreclosure and sale. But it is to be noted that the Idaho statute above quoted does not purport to deal with the subject of receiverships, or to abrogate or modify the general rules of equity pertaining thereto. Upon the other hand, in the chapter of the Code upon that subject we find, not only the general provision that receivers may be appointed in all cases where they "have heretofore been appointed by the usages of courts of equity," but the specific provision that in foreclosure suits they may be appointed where the conditions of the mortgage have been broken, and the "property is probably insufficient to discharge the mortgage debt." Here it was shown that the mortgagor was insolvent, and that by reason of certain conditions already mentioned there was danger that the value of· the property would be impaired, and further that the property was probably insufficient to discharge the bonded debt.

The question under consideration has never been decided by the Supreme Court of the state; ·but it is elementary that the several sections of the Code are to be construed together, and, if possible, all are to be given effect. Brandon v. Fremont County, 6 Idaho, 482, 56 Pac. 264. Applying that rule, I think it must be held that, but for the then-existing receivership, a receiver could and should have been appointed in the foreclosure suit. The view finds strong support in the· case of Moncrieff v. Hare, 38 Colo. 221, 87 Pac. 1082, 7 L. R.. A. (N. S.) 1001, decided by the Supreme Court of the state of Colorado, where also there are similar statutory provisions. The question there had full consideration, and a large number of cases are collated and commented upon. See also· Scott v. Hotchkiss, 115 Cal. 89, 47 Pac. 45, and Schreiber v. Carey, 48 Wis. 208, 4 N. W.ᵢ 124. It is not thought to be out of harmony with Teal v. Walker, 111 U. S. 242, 4 Sup. ·Ct. 420, 28 L. Ed. 415, or Couper v. Shirley, 75 Fed. 168, 21 C. C. A. 288. In the latter case it is expressly pointed out that the receivership there under consideration rested upon no established principles of equity, and so· far as I am able to discover it was not authorized by any statute of the state of· Oregon, where the case arose. In the former, the question of the conditions under which a receiver may be appointed was not directly involved.

I do not hold that a receiver may be appointed for the purpose of giving effect to the provisions of a trust deed mortgaging the income. But when conditions are shown to exist which, under the statutes of the state, plainly authorize a receivership, no good reason is apparent why the possession thus rightfully acquired should not operate to

make effective the agreement of the parties expressly pledging the income. An apparently contrary conclusion, it must be conceded, was reached by the Supreme Court of the state of Washington in Norfor v. Busby, 19 Wash. 450, 53 Pac. 716. From the view I have taken it follows that the lien of the trust deed attached to the income arising after December 19, 1914, and the whole thereof being admitted to be insufficient to satisfy the mortgage indebtedness, general creditors have no interest therein.

[3] It remains to consider whether in the distribution of the income fund accruing prior to that date the whole of the trustee's original claim, or only the residue remaining after the application of the proceeds of the sale, shall be taken as the basis of apportionment. For the trustee it is said that, while the latter is the rule in bankruptcy proceedings, the former prevails in "equity" cases; and it must be conceded that, in so far as it concerns claims secured by collateral in national bank receiverships, the proposition has been authoritatively established. Merrill v. National Bank, 173 U. S. 131, 19 Sup. Ct. 360, 43 L. Ed. 640; Aldrich v. Chemical National Bank, 176 U. S. 618, 20 Sup. Ct. 498, 44 L. Ed. 611; s. c., Chemical Nat. Bank v. Armstrong, 59 Fed. 372, 8 C. C. A. 155, 28 L. R. A. 231; Id., 65 Fed. 573, 13 C. C. A. 47, 28 L. R. A. 231. And upon principle possibly no substantial reason can be given why, if controlling in national bank cases, the rule should not be extended to other insolvent estates, and to mortgage claims as well, provided, of course, there are no opposing statutory provisions. Its designation as the "equity" rule I am inclined to think carries with it a misleading implication. The fields in which the two rules obtain are both of equitable cognizance, and upon the question of which is the more equitable in principle or effect there may be, and is, a wide difference of view. That judicial opinion is divided is amply evidenced by the vigorous dissent of four of the judges in the Merrill Case, above cited. And it is of significance, I think, that generally, if not universally, where there has been an expression of the nonjudicial view, through legislative enactment, the so-called bankruptcy rule has prevailed. It is embodied in the Bankruptcy Act of 1898, passed about the time of the rendition of the Merrill decision. It was the recognized rule in the state insolvency law of Idaho, which was superseded by the National Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 544). It is likewise the principle upon which estates of deceased persons are administered in this state. There is, of course, no inherent reason why, in the judicial distribution of a debtor's property to his creditors, there should be one rule in a bankruptcy or probate proceeding and another where the estate is administered under the direction of a court of general equity jurisdiction. A more accurate characterization of the two rules would therefore seem to be to designate one as the legislative and the other as the court rule. Now it has been held upon high authority that neither the National Bankruptcy Act nor the state insolvency law is binding upon a federal court administering an estate through a receivership in the general course of equity (Commercial, etc., Bank v. Lumber Co. [C. C.] 194 Fed. 732, and cases therein cited), and the foregoing observations are made, not as furnishing sufficient ground in

228 F.—62

themselves for following the legislative rule in this case, but as suggestive of considerations why I am inclined to restrict the application of the other rule to the limits within which it has been authoritatively established. Perhaps more fully than anywhere else the reasons for the court rule are set out in the opinion written by Judge Taft, in Chemical National Bank v. Armstrong, 59 Fed. 372, 8 C. C. A. 155, 28 L. R. A. 231, to which approving reference is made by the Supreme Court in the Merrill Case, supra. As already stated, the Armstrong Case involved a national bank liquidation under the provisions of the National Banking Act. Of the claims against it some were secured by collateral, and others were wholly unsecured. The only pertinent provision of the Banking Act is that the Comptroller, who takes possession of a failing bank and through his receiver winds up its affairs, shall make "a ratable dividend" of the funds to the creditors. In the course of his opinion Judge Taft said:

"It is manifest that it would utterly defeat the object of the Banking Act if, after the suspension, the assets remained subject to levy, execution, or attachment, and therefore that the passing of the assets into the hands of the receiver removes all the property of the bank from liability to process to secure satisfaction of judgments. Bank v. Colby, 21 Wall. 609 [22 L. Ed. 687]. The right which a creditor of the bank had before suspension of levying an execution to satisfy his judgment is gone, and for it is substituted a fixed and definite interest in the assets as a security for the payment of his debt, which it is the purpose of the Banking Act to reduce to money, and apply on his debt, with all convenient speed. We see no reason why this does not apply as well to creditors who hold collateral as to those who are unsecured. It is well settled that the holding of collateral does not prevent a creditor from enforcing his claim in the ordinary way by judgment and execution against a debtor without any deduction for his collateral. Lewis v. U. S., 92 U. S. 618 [23 L. Ed. 513]. When the secured creditor is required by the transfer of the assets in trust for winding-up purposes to forego his right to satisfy his entire debt out of the property of the bank by levy and execution, why should there be substituted for that right anything less than that which the unsecured creditor gains by yielding up the same right? Take the case of two creditors of the bank for $1,000 each, one with collateral and the other unsecured. Before suspension, the one has two modes of collecting his debt—first, by levy and execution for $1,000; and, second, by reducing and applying the collateral. The other has but one—that of a levy and execution for $1,000. When the bank suspends, the unsecured creditor acquires, in exchange for his right to levy on the property of the bank to make $1,000, an undivided interest in the assets held by the receiver, after the circulating notes are paid, which bears the same ratio to the entire assets of the bank as $1,000 does to the entire indebtedness. If so, why should not the secured creditor, who, before the suspension, had also the right to make $1,000 by levy on the property of the bank, receive the same ratable interest in the assets held by the receiver? The suspension of the bank, and its seizure by order of the Comptroller, have no effect to change the rights of the creditor with reference to his collateral."

I have quoted at unusual length in order to disclose fully the basis and import of the reasoning by which the rule is supported. In substance it is that the appointment of a receiver should not operate to change the status of the two classes of creditors, one secured and the other unsecured, in their relation either to the estate or to each other; that but for the receivership the collateral holder would have had the right to sue and satisfy his debt by levy and execution against the en-

tire property, regardless of his collateral; and that he cannot justly be deprived of that right to his disadvantage, and to the advantage of the unsecured creditor, by the institution of a receivership. Now, if we adopt this course of reasoning in the instant case, what is the result? The trustee here held a claim secured by mortgage. The property mortgaged is situate in Idaho, and the mortgage contract is therefore to be adjudged by the local law. By section 4520 of the Revised Statutes of Idaho it is provided that:

"There can be but one action for the recovery of any debt, or the enforcement of any right secured by mortgage upon real estate or personal property."

And such action is defined to be a foreclosure suit. In such suit, after sale, but not until after sale, the plaintiff may have personal judgment, which, and which only, he may satisfy by levy and execution. Such being the law, to hold that the trustee here may receive a dividend upon its entire claim and hold its security in reserve for the satisfaction of the balance, if any, remaining unpaid, is manifestly to reverse the statutory order, and it would be to do just what in the Armstrong Case was held could not justly be done, for thus the receivership would operate to alter the relation of the two classes of creditors, to the advantage of the secured creditor and to the disadvantage of the unsecured. Had not the receiver been appointed, the unsecured creditor could have passed his claim to judgment and satisfied the same by levy and execution; but this the trustee could not have done, for it was without such remedy until it had exhausted its security, and then it could levy, not for the full amount of its original claim, but only for such deficit as remained unpaid. The equivalent of the remedy which was thus available to it without a receivership is, under the circumstances, the recognition of this deficit, and that only, as the basis of a ratable distribution, and this is the rule which will be followed.

For the trustee the further suggestion is made that it would be inequitable now to hold that so much of the income as has been applied by the receiver to new construction and to interest and sinking fund upon underlying divisional bonds is subject to distribution in this proceeding. But as shown by the paragraph hereinbefore quoted from the decree, which is binding upon the trustee, these funds are deemed to be on hand; they were permitted to be diverted with the express understanding that they would be restored. In theory, therefore, they never were disbursed, but have always remained, and are now, in the hands of the receiver. If it be said that, but for the receivership, the debtor might have expended them for the same purposes, to the benefit of the trustee, it may also be said that, but for the receivership, they might have been attached by the general creditors, and thus wholly lost to the trustee.