## MYERS v. HINES.

### Opinion delivered January 31, 1916.

1. CHATTEL MORTGAGES — PERFORMANCE — RIGHT OF MORTGAGEE.— The owner of a business, turned it over to another to manage, taking a mortgage on a certain wagon and team of horses to secure the manager's faithful performance of the contract. *Held*, when the business was insolvent when retaken by the owner, and the manager had withdrawn a sum as salary in excess of the contract agreement, the owner was entitled to the proceeds of the sale of the mortgaged property.

2. PRINCIPAL AND AGENT—CONTRACT TO MANAGE BUSINESS—RIGHTS OF PRINCIPAL.—The owner of a business turned it over to one A. to manage, the contract stipulating the manner in which advances were to be repaid, but not binding A. to pay the same; the business became insolvent. *Held*, after payment to the owner by the receiver of the amount received from a sale of the assets of the business, that the owner could not recover from A. the balance on the money advanced to him.

3. RECEIVERS—APPOINTMENT—COSTS.—A receiver was improperly asked by A., who had been employed by the owner of a business to manage the same, A's. compensation being dependent upon there being net profits derived from the business; after the owner resumed possession of the business, *held*, in a suit by A. to wind up the business, the cost of a master and the receiver in said suit, were assessable against A.

Appeal from Boone Chancery Court; *T. H. Humphreys,* Chancellor; reversed.

#### STATEMENT BY THE COURT.

Appellees brought this suit to wind up the affairs of an alleged partnership, doing business under the firm name of The Harrison Lumber Company, and for an accounting, and asked the appointment of a receiver, alleging the insolvency of the partnership, and that W. J. Myers, a member of the firm, had wrongfully taken possession of the assets and books of account of the concern.

A receiver was appointed on the application of E. C. Hines, appellee, and appellant moved to vacate the order of appointment. Appellant answering denied that any partnership existed, alleged that the business was his own and conducted for him by appellees, under the terms of a written contract, by which he was to furnish certain sums of money and to have interest at a stipulated rate thereon and appellees were to conduct the business and receive as their pay the net profits after certain deductions were made under the provisions of the contract, under the terms of which also a team and wagon was to be furnished by appellees and a lien was given thereon to secure the faithful performance of the contract on the part of E. C. Hines; that he had furnished $9,000.00 for the conduct of the business, and in January, 1912, declined to make any more advances and elected to terminate the contract, and possession of the business and assets was given by appellees; that "an invoice was made by agreement of plaintiff and defendant of all stock and material on hand and a statement of expenses, the values in said invoice being named by plaintiff, and that plaintiff refused to settle by such invoice after agreeing to do so. It was further alleged that plaintiff had failed to keep proper books and accounts of the business and had paid to himself without authority and incurred losses in the sum of $1,300.00; prayer that the complaint be dismissed and the receivership be dissolved, for costs, etc.

The plaintiff, E. C. Hines and the representatives of N. C. Hines, deceased, filed an amended complaint alleging the date of the commencing of the business, the death of N. C. Hines, that the business had been prosperous and that defendant was indebted to the plaintiffs in certain named amounts; that at the time the defendant took wrongful possession of the business it was of the value of more than $10,477.33; that under the terms of the contract there was due to plaintiff, E. C. Hines, more than $3,000.00, which defendant refused to pay or to make a settlement; and it was also alleged that the transactions of the business of the concern were of a complicated

nature and required the stating of an account by a master; prayed for an accounting and judgments in favor of the heirs of N. C. Hines for $1,500.00 and an additional judgment for $3,000.00 for E. C. Hines, and a continuance of the receivership, and a master to state an account.

The master and receiver were appointed and an account was stated, and the inventory taken by the receiver showed the total assets of the concern, which the court found from the receiver's report to be $10,477.97, and from the master's report the amount due W. J. Myers $9,093.66, for money advanced to the business with interest, and from the receiver's report outstanding accounts and claims against the concern amounting to $1,871.78, making a total of liabilities of $10,965.44, $487.87 more liabilities than assets, and that there could be no actual net profits except such amounts as were paid to plaintiffs for salary each month.

The court found also that the master's report was correct, "figured on basis of daily sales and estimated profits," but held it was necessary, in order to ascertain the net profits, to take into consideration the actual value of all assets on hand at the time the concern ceased to do business, and that there was no way to ascertain the net profits from the books kept.

That the business was conducted under the terms of a written contract from the 9th day of November, 1909, till the 15th day of February, 1912, when W. J. Myers took possession and executed a receipt to E. C. Hines for all the property of the concern, in which it was recited that the rights of both parties were reserved. He also found that under the terms of the contract E. C. and N. C. Hines were employees of the defendant, their compensation stipulated in the contract, that the business was not a partnership, and that said E. C. and N. C. Hines were to be paid for their services out of the net profits arising from the business; and that under said contract the net profits were to be ascertained by the sale of the property, out of the proceeds of which the money furnished by W. J. Myers should be returned to him; then all the ex-

penses and liabilities of the concern should be paid and that the balance should represent the net profits.

The written contract was introduced in evidence showing the terms under which the business was to be conducted. It provides: "It is agreed by and between both parties to this contract that said Myers shall employ and does hereby employ the said two parties of the second part to manage and run said business for him in his name, and as his agent," for a specified period; it then provides what books and accounts shall be kept by them, how the business shall be conducted and the reports made, and required them to furnish a wagon and team for use in the business, and "for their services * * * said parties of the second part shall have and receive from said party of the first part all the net profits arising from the business," after deducting certain specified amounts and interest, payments for insurance, rent and expenses incident to the business, which net profits were to be ascertained as found by the court and already set out above. The contract contained also a mortgage of the team and wagon to secure the faithful performance of its obligations by Hines, which provided that "they shall promptly pay, deliver and account for, to said party of the first part, all moneys, goods, wares and merchandise received by them under the contract." It was also shown that the inventory taken by the parties before the bringing of the suit showed the liabilities of the company amounted to $10,723.80 and the assets only $9,686.65.

The undisputed testimony shows that W. J. Myers had advanced for use in the business, $9,000.00, which was to be returned and had not been returned; that Hines drew out of the business, during its continuance, $3,938.44, and that the receiver realized from the sale of the assets about sixty per cent of the inventory price. The court allowed $300.00 for the services of the master and $500.00 for the receiver and his attorneys, and directed it to be paid out of the funds, and also held that the proceeds of the team and wagon sold should be paid to E. C. Hines. Myers prosecuted this appeal from the decree rendered.

*Troy Pace* and *T. L. Crawford,* for appellant.

1. It was error to allow plaintiff $315.00 for the wagon and team. They should have been charged with a lien for the amount plaintiffs owed.

2. The court erred in not rendering judgment for defendant for the balance of his advances.

3. It was error to make the costs chargeable to the fund in court, instead of against the plaintiff. 23 Am. & E. Enc. L. 1107; 86 Pac. 113; 75 Fed. 168; 12 N. Y. Supp. 120; 2 High on Receivers § 809 a; 35 Pac. 385; 18 Utah 279; 31 Iowa, 428; 2 Page Ch. 438; 168 Ill. 266; 183 *Id.* 467; 79 Pac. 698; 108 Am. St. 510; 45 Hun. 219.

*E. G. Mitchell, W. N. Ivie* and *Guy L. Trimble,* for appellees.

1. The case should be affirmed both because it is not properly before this court and because it is without merit. 59 Ark. 135; 72 *Id.* 185; 111 *Id.* 202; 86 *Id.* 608.

2. *On the merits* no cause for reversal is shown. The costs were properly ordered paid out of the fund. 95 Ark. 389; 86 *Id.* 608. Defendant turned plaintiff out and declined to account. At the sale defendant bought in the property. He was not entitled to any judgment whatever. Hines carried out his contract and fulfilled all his obligations. The decree is just and should be affirmed.

KIRBY, J. (after stating the facts). (1) Appellant contends that the court erred in failing to adjudge him entitled to the proceeds of the sale of the horses and wagon mortgaged to secure the faithful performance of the contract and the return of all moneys received by appellees, and also in refusing to render judgment in his favor against the defendant, E. C. Hines, for the balance of the money furnished to him under the terms of the contract for carrying on the business, over the amount realized from the assets of the business upon its being wound up, and in assessing against the fund, realized from the sale of the assets, the costs of the master and receiver.

Under the terms of the contract and mortgage the appellee was bound to the faithful performance of the contract, and the team and wagon was mortgaged to secure his faithful performance of it, and bound to the payment and accounting for all moneys received by Hines under the contract.

The business was insolvent when it was taken possession of by the appellant, Myers, as shown by the books kept by Hines, which also showed that he had withdrawn from the business, as salary, about $4,000, and the assets, valued as in his own inventory made at the time Myers took possession of the business, were more than $1,000 less than the liabilities.

The court found that it was impossible to ascertain the net profits of the business, before the failure of it, from the books kept by said appellee.

Under these circumstances we are of the opinion that the chancellor erred in holding that appellant was not entitled to the proceeds of the sale of the horses and wagon under the terms of his mortgage from appellee.

(2) Appellant's second contention, that the court erred in not rendering judgment against the appellee, Hines, for the balance of the amount of money shown to have been advanced him, after payment by the receiver of the amount realized from the assets of the business, is not well founded. The business was his own, as shown by the terms of the contract, and conducted by appellees as his agent, and the written contract provided the manner in which his advances should be repaid, and did not bind said Hines to the payment thereof except in that portion of it mortgaging the wagon and team as security for the return thereof.

(3) The third assignment, complaining of the assessment of the costs of the master and receivership against the fund realized from the sale of the assets of the business, must be sustained. The business was known to be insolvent and shown to be so by the books, as kept by appellee, Hines, who also knew that his compensation depended upon there being net profits, and consisted of

such net profits to be determined as provided by the written contract. The insolvent business had been taken charge of by appellant, the owner of it, who was financially responsible, and not alleged to be insolvent, and there was no necessity for the appointment of a receiver to take charge of said business and deprive the owner of his property and dissipate it in expense of a master and receiver at the instance of said appellee, who had no interest in it to be protected or preserved. The payment of the expense of the master and receiver, out of the funds, was improper and unwarranted, and said master and receiver having been appointed at the instance of appellee, the cost of their compensation, should be assessed against said appellee, who improperly procured their appointment, and not against the receivership fund realized from the sale of appellant's property, and the court erred in holding otherwise. 23 Am. & Eng. Enc. L, 1107; High on Receivers, § 809a; 34 Cyc. 368; *Highley* v. *Deane,* 168 Ill. 266; *Hendrie & Bolthoff Mfg. Co.* v. *Parray,* 86 Pac. 113; *Couper* v. *Shirley,* 75 Fed. 168; *Willis* v. *Sharp,* 12 N. Y. Supp. 120; *Weston* v. *Watts,* 45 Hun. 219.

The decree is accordingly reversed and the cause remanded with directions to enter a decree in accordance with this opinion.